Edgar Eby and Marian H. Eby v. Commissioner
Eby v. Commissioner
Docket No. 93355.
United States Tax Court
T.C. Memo 1963-207; 1963 Tax Ct. Memo LEXIS 136; 22 T.C.M. (CCH) 1034; T.C.M. (RIA) 63207; August 2, 1963
*136 Held, petitioners failed to prove a theft loss in 1957. Arthur L. Berger, P.O. Box 432, Harrisburg, Pa., for the petitioners. Richard A. Francis, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent determined deficiencies in petitioners' income taxes and additions to tax in the amounts and for the calendar years, as follows: Income Tax
Addition to Tax
Year
Deficiency
[Sec. 6653(b)]
1954
$1,042.02
$ 521.01
1955
828.76
414.38
1956
944.85
472.42
1957
520.94
260.47
Totals
$3,336.57
$1,668.28
Some of the issues originally presented have been determined by the stipulation of facts and by concessions of the parties at the trial *138 and in the pleadings as amended to conform to proof. Petitioners concede that the payments received by them from Ralph B. Hatz, in each of the years involved, constituted income to them. Respondent concedes that no part of petitioners' understatement of income was due to fraud and that he erred in asserting the addition to tax, under section 6653(b), [1] for each of the years involved. Petitioners' principal assignment of error remaining at issue is that respondent failed to allow a deduction of $21,500 for 1957 as a loss from theft under section 165(c)(3). The allowance of such a deduction would result in a net operating loss for that year and afford carryback deductions for prior years - 1954, 1955, and 1956 - under section 172, with resulting overpayments of income taxes according to the petition and petitioners' brief. Petitioners also contend that deficiencies for 1954, 1955, and 1956, are outlawed by the statute of limitation. Respondent denies error in the asserted deficiencies. He also affirmatively alleges that petitioners' consents extended the period for assessment of tax *139 for 1956 to June 30, 1961, and, further, that the 6-year period of limitation is applicable to the years 1954 and 1955, under section 6501(e)(1)(A), because of petitioners' omission of gross income in excess of 25 percent of the amount reported on the return for each of those years. Findings of Fact Most of the facts have been stipulated by the parties and such facts are found accordingly and adopted by the Court as part of its findings. Petitioners, husband and wife, residing in Hershey, Pennsylvania, filed their joint income tax returns for the years in question with the district director of internal revenue at Philadelphia. On each of their returns they reported income consisting of wages received by the husband from the Harrisburg State Hospital at Harrisburg, Pennsylvania. Marian Eby had a brother, Ralph B. Hatz, now deceased, who was a resident of Pittsburgh during the years involved here. In 1946 Ralph told the petitioners that he had a profitable investment for them. They then had available the sum of $10,000 which they had realized from the sale of their home. He told them that an investment of that sum would produce a return to the petitioners of $200 per month. On *140 December 26 of that year, petitioners turned over $10,000 to Ralph and he gave them his receipt on which the notation was made "Principal Guaranteed Against Loss." Thereafter petitioners turned over additional sums of money to Ralph from time to time. In 1950 Marian inherited $7,500 from a sister which she turned over to him. At about this time he advised petitioners that if the total amount held by him could be increased to $20,000 their monthly return would be increased to $400. Thereafter the petitioners transmitted additional funds to Ralph as indicated below: June 14, 1950
$1,500.00
July 2, 1951
1,000.00
October 15, 1954
500.00
November 24, 1954
1,000.00 Ralph gave the petitioners receipts for these sums, some of which had specific notations thereon. The receipt dated October 15, 1954, bore the notation "Special Guarantee Plus 20% Bonus by Dec. 15th," and the one dated November 24, 1954, bore the notation "Special 10% for 4 months, Mar. 24-26, 1955." No advances of additional funds were made during 1955, 1956, or 1957. Payments were made by Ralph B. Hatz to the petitioners in the years and amounts indicated below: 1947
$ 2,300.00
1948
2,500.00
1949
2,450.00
1950
4,430.00
1951
4,780.00
1952
5,350.00
1953
4,950.00
1954
5,050.00
1955
4,500.00
1956
5,100.00
1957
2,900.00
Total
$44,310.00
*141 The last known payment made by Hatz to the petitioners was on August 6, 1957, in the amount of $100. Hatz did not make any investments in the names of the petitioners nor were dividends or other income allocated on his books to any account for the petitioners. He did make large security purchases with funds received from a number of persons, but no portion of the amounts received by the petitioners can be traced to any specific securities purchased by him. Hatz was declared insolvent and a receiver was appointed to take over his affairs by the Court of Common Pleas of Allegheny County, Pennsylvania, on September 25, 1957. At or about the time of the last payment received by petitioners from Hatz in August of 1957, his wife wrote petitioners to the effect that there would be no more interest checks. This was the first indication petitioners had that Hatz was in financial trouble. Later additional information about the difficulties was received by petitioners from other relatives, but the record does not disclose wht caused the Hatz financial collapse. The report of the auditor for Hatz's insolvent estate in Allegheny County was filed on October 24, 1957, and showed assets of *142 $142,210.59 and a total amount due creditors of $1,030,369.58. Thereafter on January 13, 1958, a petition for involuntary bankruptcy was approved by the District Court for the Western District of Pennsylvania. The trusteee in bankruptcy appointed by that court realized a total of $39,079.62 from the bankrupt's assets, and allowed claims in the total amount of $542,871.53. A distribution of.0276308 percent on allowed claims was approved May 25, 1960, and thereafter the balance in the hands of the trustee was $7,782.16. The petitioners were shocked by Hatz's insolvency and they never gave a thought to filing any claims in the receivership or bankruptcy proceedings or taking any action against him themselves. They did not file claims and received no distribution in either proceeding. The parties have stipulated that all payments received by petitioners from Hatz were income to them, and that such amounts were not gifts, the return from a joint and survivor annuity, the return from a joint venture, or the return of principal. When the petitioners originally turned over $10,000 to Hatz, he informed them that he was in the business of making investments for people and that he could *143 make money for them if they would invest with him. He informed them at various other times that not only would their investment be profitable but that the principal would grow. He advised the petitioners not to worry if the monthly checks he sent them were in uneven amounts or a little late. He also advised them that the payments they received from him would be tax free because he would pay any taxes due thereon. The evidence does not disclose any specific agreement or arrangement as to how the petitioners' money would be invested. Petitioners had confidence and trust in Hatz and understood that their money would be invested in stocks. There is no evidence that Hatz agreed to invest in stocks or to register assets in petitioners' names. They never knew what investments were being made for them and never asked to see or were shown any stock certificates or securities. In fact, they communicated with Hatz only infrequently, and saw him very seldom over the years. They seemed to be entirely satisfied with the fact that their monthly checks were received with a degree of regularity and never made any inquiries about the source of their income. Their primary interest was in obtaining *144 the monthly checks in the approximate amount promised; initially $200 per month beginning in 1947 and $400 per month beginning in 1950. The petitioners had had no experience with investments, were not familar with books of account, and had no personal knowledge about investments or the purchase of securities. Hatz never reported or accounted to petitioners with respect to their funds or how they were invested, and petitioners never requested or sought any such accountings or reports. The statutory notice of deficiency was mailed to the petitioners by the respondent covering all of the years involved on April 13, 1961, and set forth the determination that the petitioners failed to report ordinary income received from Ralph B. Hatz in the amounts of $5,050 for 1954, $4,500 for 1955, $5,100 for 1956, and $2,900 for 1957. The amount of gross income omitted from the petitioners' joint returns for the years 1954 and 1955 is in excess of 25 percent of the amount of gross income reported. The statutory notice of deficiency was timely as to all of the taxable years involved herein. Opinion In addition to the stipulated facts we have included in our Findings of Facts all pertinent facts *145 established by the testimony of the sole witness, Marian Eby. Numerous issues raised by petitioners' alternative pleadings as to the character of the payments received from Hatz, though now determined by stipulation and concession, indicate ambiguity as to the character of the transaction involved. Marian's testimony discloses that the understanding with Hatz was not at all clear to petitioners either initially in December 1946, or throughout the years involved. Her testimony is vague as to crucial circumstances surrounding the transaction, does not establish the details or particulars of the parties' agreement, and sheds little light on what may have actually happened to the petitioners' funds in Hatz's hands. The parties have stipulated that the unreported payments received from Hatz by petitioners were income to them, but the parties are not in agreement as to the character of such income. Petitioners pleaded alternatively and now contend that such payments were not "interest income" as determined by respondent but instead were income from investments made by Hatz as petitioners' agent with their funds; that petitioners sustained a loss of their principal sum of $21,500 in 1957 *146 by reason of embezzlement, fraudulent pretense or conversion discovered in 1957 and that therefore petitioners are entitled to a deduction in 1957 for loss from "theft" under section 165(a), (c)(3), and (e) of the Internal Revenue Code of 1954. [2] Petitioners further contend that the claimed theft loss results in a net operating loss for 1957 with carryback deductions for prior years under section 172 of the Code. On brief the parties are agreed that it is well settled that the word "theft" as used in section 165(c)(3), *147 supra, has a general and broad connotation, intended to cover any criminal appropriation of another's property to the use of the taker and that the exact nature of the crime, whether larceny or embezzlement, obtaining money under false pretenses, swindling, or other wrongful deprivations of property of another, is of little import so long as it amounts to theft under the law of the jurisdiction where the loss was sustained. Edwards v. Bromberg, 232 F. 2d 107 (C.A. 5, 1956); Curtis H. Muncie, 18 T.C. 849 (1952); Michele Monteleone, 34 T.C. 688 (1960); Paul C. F. Vietzke, 37 T.C. 504 (1961); Saul M. Weingarten, 38 T.C. 75 (1962); and Evelyn Nell Norton, 40 T.C. - (June 7, 1963). Further, a criminal conviction of the taker of another's property is not a necessary element in a taxpayer's burden of proof in this Court that a theft loss has been sustained. Michele Monteleone, supra. Petitioners contend that Hatz's conduct with respect to the receipt and handling of their principal fund of $21,500 constituted embezzlement by an agent under section 4824, fraudulent conversion of property under section 4834, *148 and/or cheating by fraudulent pretenses under section 4836 of Title 18, Pennsylvania Statutes. [3] Each of those sections requires fraudulent intent as a necessary element of a violation thereof. *149 The record herein is devoid of competent evidence from which the Court may reach a reasonable conclusion that Hatz, either initially or throughout the period involved, entertained any intent to defraud petitioners, or knowingly and designedly made false representations to petitioners, or even actually misappropriated petitioners' funds to his own use or to the use of anyone else. The record discloses a rather nebulous understanding on the part of petitioners as to the nature of their transaction with Hatz and certainly there was no specific agreement as to how Hatz would use the funds petitioners transmitted to him. Hatz represented to petitioners that he was in the business of making investments for people and it is stipulated that he did in fact "make large securities purchases with funds received from a number of persons," presumably including petitioners' funds. He also represented that he could make money if they would invest with him; that he had a profitable investment for $10,000 which would produce a return of $200 per month to petitioners; and, later, that if the amount of petitioners' funds held by him was increased to $20,000, petitioners' return would increase to $400 *150 per month. Over a period of about 10 years Hatz made payments totaling in excess of $44,000 to petitioners, who were satisfied with the arrangement without any knowledge of how Hatz operated, or how he had invested their funds. The monthly rate of return approximated the promised figures. It seems axiomatic that if his investments yielded or were expected to yield income of 24 percent per year they would have been highly speculative in nature, and the risk of loss of principal must have been great. Contrary to petitioners' contention, the fact that Hatz did not purchase any stocks in petitioners' names and allocate dividend or other income to them on his books and the further fact that Hatz became insolvent in 1957, does not demonstrate a wilful disregard of their arrangement with fraudulent intent to convert petitioners' funds either at the times of petitioners' transmittals to Hatz or thereafter. There is no evidence that Hatz was engaged in some nefarious scheme, or that he intended to bilk petitioners. In the Norton case, supra, we held that where a contractor's representations as to payments to subcontractors and materialmen were knowingly and designedly false, the taxpayer *151 sustained a deductible theft loss on account of payments made to the contractor on the basis of such false representations. However, we also held that where the contractor's untrue statements as to the quality of work done were not shown to be knowingly and designedly false, the taxpayer failed to establish a theft loss of amounts expended because of such untrue statements. Here we can only conclude that Hatz was engaged in investments or stock market operations using funds advanced to him by petitioners and others; that Hatz was successful in his operations for about 10 years, at least so far as petitioners were concerned; and that for some undisclosed reason Hatz's operations failed and he became insolvent in 1957, with substantial sums owed to his creditors. Bad investments, highly speculative ventures or poor investment judgment are as likely explanations for the bursting of the Hatz bubble as the petitioners' suggestion, without proof, that Hatz stole from his own sister and her husband, and his other customers. There is no evidence to support the latter conclusion. In the instant case the record at most indicates that Hatz may have been vague or even untruthful as to the *152 exact nature of his operations. Petitioners have, however, failed to establish that he ever had any fraudulent intent, or that he committed any theft from petitioners or anyone else. The facts disclosed by this record are far different from those in Samuel M. Felton, 5 T.C. 256 (1945), upon which petitioners rely. There the evidence disclosed that the investment expert to whom the taxpayer intrusted his money absconded; that he had not invested the funds intrusted to him but instead had paid them over to others to whom he was indebted or had used the money for personal living and business expenses. He was indicted and convicted upon a plea of guilty of embezzlement and fraudulent conversion. As we have observed above, a criminal conviction for theft is not necessary before a theft loss deduction may be allowed for income tax purposes. Michele Monteleone, supra.However, in cases such as this, it is significant that there is no evidence that Hatz was ever charged with or convicted of any criminal activity either with respect to petitioners' funds or the funds of any others in his investor-creditors. The absence of such evidence, in the light of the other *153 facts disclosed by this record merely emphasizes that petitioners have failed to carry their burden of proving that a theft loss occurred. See Arcade Realty Co., 35 T.C. 256 (1960). In Mary Frances Allen, 16 T.C. 163 (1951) we said: Petitioner has the burden of proof. This includes presentation of proof which, absent positive proof, reasonably leads us to conclude that the article was stolen. If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail. If the evidence is in equipoise preponderating neither to the one nor the other conclusion, petitioner has not carried her burden. We conclude that petitioners have failed to carry their burden of proof that they sustained a theft loss in 1957 within the meaning of section 165(c)(3), supra. We sustain respondent's determination that petitioners received unreported income in the amounts set forth in the deficiency notice for the taxable years involved, and also hold for the respondent on the issue of the theft deduction claimed by petitioners for the year 1957. *154 We hold for the petitioners with respect to the asserted additions to tax under section 6653(b). Decision will be entered under Rule 50. Footnotes
1. Unless otherwise noted, all Code references are to the Internal Revenue Code of 1954.↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *
(e) Theft Losses. - For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.↩
3. Purdon's Penna. Statutes, Annotated, Title 18. Sec. 4824. Embezzlement by bankers, brokers, etc. Whoever, being a banker, broker, attorney, merchant or agent, and being intrusted, for safe custody, with the property of any other person, and, with intent to defraud, sells, negotiates, transfers, pledges, or in any manner converts or appropriates to or for his own use or the use of any other person, such property, or any part thereof, is guilty of embezzlement, a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or undergo imprisonment not exceeding five (5) years, or both. 1939, June 24, P.L. 872, § 824. Sec. 4834. Fraudulent conversion of property. Whoever, having received or having possession, in any capacity or by any means or manner, of any money or property, of any kind whatsoever, of or belonging to any other person, or which any other person is entitled to receive and have, fraudulently withholds, converts, or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own use and benefit, or to and for the use and benefit of any other person, is guilty of a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or to undergo imprisonment not exceeding five (5) years, or both. The offense specified in this section may be joined in the same bill of indictment with any other felony or misdemeanor arising out of the same transaction, and there may be included in the same indictment as many counts as there are separate and distinct misdemeanors hereunder committed against the same person. 1939, June 24, P.L. 872, § 834. Sec. 4836. Cheating ny fraudulent pretenses. Whoever, by any false pretense, obtains the signature of any person to any written instrument, or obtains from any other person any chattel, money, or valuable security, with intent to cheat and defraud any person of the same, or being an officer, manager, agent, employe of or in any way interested in any person, by false pretense, knowingly and with intent to defraud, procures obtains, or aids, assists, or abets in obtaining from any other person, any chattels, moneys, or valuable securities for such person of which he is an officer, manager, agent, employe or in which he is in any way interested, is guilty of a felony, and on conviction, shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or undergo imprisonment not exceeding five (5) years, or both. If, upon the trial of any person indicied for such a felony, it shall be proved that he obtained the property in question in such manner as to amount in law to larceny, he shall not, by reason thereof, be entitled to be acquitted of such felony. No person tried for such felony shall be liable to be afterwards prosecuted for larceny upon the same facts. 1939, June 24, P.L. 872, § 836; 1943, May 21, P.L. 306, § 1.↩