MICHELE MONTELEONE AND FRANCES MONTELEONE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72859. Filed July 13, 1960.

*William A. Cruikshank, Jr., Esq.*, for the petitioners.
*Eugene F. Reardon, Esq.*, for the respondent.

TIETJENS, *Judge:* This proceeding involves an income tax deficiency for the taxable year 1954 in the amount of $13,301.

The issue for decision is whether petitioner suffered a theft loss deductible under the provisions of section 165(c)(3) of the 1954 Code.

FINDINGS OF FACT.

Some of the facts were stipulated, are so found, and are incorporated herein by this reference.

During the taxable year 1954, Michele and Frances Monteleone were husband and wife. They filed a joint Federal income tax return for that year with the district director of internal revenue at Los Angeles. Michele is a party to this proceeding solely by virtue of having signed the return. Hereafter, Frances will be referred to as the petitioner.

In January 1954, petitioner received an interlocutory decree of divorce from her husband. Incident to a property settlement between them, she received at that time a substantial amount of cash from Michele. Publicity was given the divorce and accompanying cash settlement in the local newspapers.

In February of 1954, petitioner met Frank Coleman through a mutual acquaintance. On March 3, 1954, Coleman introduced petitioner to Herman Prujansky, a business associate of his. For many years, Prujansky had been engaged in promoting and managing night clubs, restaurants, and cocktail lounges. His primary role in these activities was to attract the clientele. In the Detroit area he had gained the title of "Night Mayor of Detroit" by virtue of his endeavors in this field. At the time petitioner met Prujansky, both he and Coleman were engaged in the operation of a cocktail lounge in the Hollywood area known as Club 22. In January 1954, Prujansky had "taken over" operation of the club at the insistence of its owner who had been unable to make a financial success of the business.

Prior to meeting Prujansky, petitioner was told by Coleman that Prujansky intended to acquire the club, and that he was presently in need of money to meet current bills. On the evening of their first meeting, petitioner advanced Prujansky $500. Subsequently, she made other advances of money to him: $5,000 on March 4, 1954; $1,100 on March 8, 1954; and $12,000 on March 16, 1954. With respect to the March 16 advance, the following agreement was executed between petitioner, Coleman, and Prujansky, also known as Herman Prujan:

This agreement between Francis [sic] Monteleone, hereinafter to be known as the Lendor, and Frank Coleman and Herman Prujan, hereinafter known as the Lendees, is drawn for the purpose of the Lendor to loan to the Lendees the sum of $12,000.00. Said sum to be repaid in the following manner: $500.00 or more per month plus 10% per annum interest on the unpaid balance until paid in full. First payment to commence on May 1, 1954.

It is further agreed between the Lendor and the Lendees that the Lendees will form a Corporation, and at that time this loan will be transferred as an obligation of this Corporation and that said Corporation will execute to the Lendor

a note and Chattel Mortgage of all the fixtures and equipment of that certain place known as the 22 Club, located at 8522 Sunset Blvd., Los Angeles, California.

Each of the various advances was made by petitioner on the strength of Prujansky's representation that the money was to be used in the acquisition and operation of the Club 22, the profits from which were to be applied against the indebtedness. In addition, petitioner was led to believe she was to become a partner in the venture. Prujansky never acquired ownership of the club.

On April 2, 1954, petitioner advanced Prujansky $6,000; on April 26, 1954, $1,500; and on April 28, 1954, $2,500. The first of these advances was made on the strength of Prujansky's representation that he held a 49 per cent interest in a partnership engaged in the development and sale of a specialty item of children's furniture; that the amount would be repaid in full; and that petitioner was to share in one-half the profits derived from Prujansky's interest in the partnership. The other advances related to a proposed business enterprise of Prujansky's known as the Seacomber's Restaurant, Prujansky representing to petitioner that he needed the funds for the acquisition and operation of this business.

With respect to the $6,000 advance, petitioner and Prujansky entered into an agreement on April 2, 1954, extracts of which are set forth below:

WHEREAS, on March 25, 1954, HERMAN PRUJAN entered into a partnership agreement with one MARY de MARIA for the carrying on of the business of selling the "14 in 1 SNUGGLE BABE", an all purpose feeding and play table for infants and children, under the partnership name of "D and M ENTERPRISES", and

WHEREAS, HERMAN PRUJAN is entitled to 49% of the net profits of said business, and

WHEREAS, FRANCES MONTELEONE is desirous of sharing in the profits of HERMAN PRUJAN from the business conducted under the name of "D and M ENTERPRISES" and has read the partnership agreement dated March 25, 1954 between MARY de MARIA and HERMAN PRUJAN,

NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

Thereafter followed language providing for the agreement referred to above.

Through the period wherein petitioner made these various advances to Prujansky, he returned $600 to her.

At some undisclosed time after Prujansky commenced operation of the Club 22 and the Seacomber Restaurant, Prujansky was required to return to Detroit for a period of some 62 days. Shortly thereafter, both business ventures failed.

On February 23, 1955, petitioner instituted a civil action in the Superior Court of the State of California, for the County of Los

Angeles, against Coleman and Prujansky to recover moneys advanced them. In her complaint in that proceeding she alleged:

On May 15, 1954, at Los Angeles, California, defendants were indebted to plaintiff in the sum of $28,000.00, for money before that time had and received by the defendants to and for the use and benefit of the plaintiff, and for money lent by the plaintiff to the defendants at their request, which debt the defendants fraudulently contracted by falsely, fraudulently and deceitfully representing to the plaintiff that they would pay over said sum money to an escrow of said sum of $28,000.00 for the benefit of the plaintiff and for the purpose of a certain business enterprise in the City of Los Angeles, County of Los Angeles, State of California, by means of which false representations they induced the plaintiff to pay over to the defendants the said sum of money, whereas the defendants when the said debt was contracted did thus obtain said sums of money with the intent of cheating and defrauding the plaintiff out of the same.

At some undisclosed time thereafter, petitioner, Prujansky, and petitioner's attorney met in the latter's office where a written stipulation was prepared in connection with the civil action filed by petitioner. Pursuant thereto, Prujansky stipulated: That all the allegations set forth in plaintiff's complaint were true; that he was indebted to petitioner in the sum of $28,000; and that judgment in that amount might be entered in her favor against him. Petitioner agreed to stay execution of judgment on the condition that Prujansky make restitution, the first payment to be made on or about February 21, 1955. In accord therewith, Prujansky made, during 1955, 3 payments to petitioner totaling $1,200. This stipulation was filed with the County Clerk of the Superior Court on June 11, 1956.

On May 15, 1956, a criminal complaint was filed by petitioner charging Prujansky and Coleman with four counts of grand theft relating to these advances. An information filed on the basis of that complaint was, on October 11, 1956, dismissed as to both parties by the Superior Court on defendants' motion under section 995 of the California Penal Code.

On March 6, 1957, the Los Angeles grand jury returned an indictment against Prujansky and Coleman charging them with six counts of grand theft relating to these advances, and a seventh count alleging violation of the Corporate Securities Act of California concerning the purported sale of a partnership interest. On June 19, 1957, this indictment was dismissed by the Superior Court as to both defendants pursuant to their motion under section 995 of the California Penal Code, relating to the conclusion of the court that the defendants had been indicted without "reasonable or probable cause."

On the joint return filed by the petitioner with her husband for the calendar year 1954 a deduction was claimed in the amount of $28,000 for "Theft by Herman Prejan aka Turk Prejan and Frank Coleman."

Respondent disallowed this deduction in full as unsubstantiated. However, he determined petitioner had sustained a nonbusiness bad debt in the amount of $6,000 on account of an indebtedness of Prujansky's which was properly to be treated as a short-term capital loss. Accordingly, he determined petitioner was entitled to utilize this loss to offset capital gains, and was further entitled to deduct the excess of the loss over gains to the extent of $1,000 as provided by section 1211(b) of the 1954 Internal Revenue Code.

Petitioner sustained a theft loss during the calendar year 1954 in the amount of $28,000.

OPINION.

The only issue is whether petitioner suffered a loss from theft deductible under the provisions of section 165(c)(3) of the 1954 Code.[1] There is no controversy as to the amount of the loss, or as to the year in which it was sustained.

Respondent's position is that the advances which petitioner made Prujansky were either capital investments or loans, and that any loss attendant thereon constituted nonbusiness bad debts. He maintains petitioner has failed to prove her loss of these funds constituted a theft as that term is defined in section 484 of the California Penal Code.[2]

For tax purposes, whether a theft loss has been sustained depends upon the law of the jurisdiction wherein the particular loss occurred. *Edwards* v. *Bromberg*, 232 F. 2d 107 (C.A. 5, 1956); *David H. Schultz*, 30 T.C. 256 (1958), remanded 278 F. 2d 927 (C.A. 5, 1960); *Morris Plan Co. of St. Joseph*, 42 B.T.A. 1190 (1940). Under the wording of section 484 of the California Penal Code, as well as the decided cases, the taking of money from another upon

---

[1] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

[2] Sec. 484. Theft defined

Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. \* \* \* For the purposes of this section, any false and fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question.

false representations or false pretenses constitutes theft. *People* v. *Daniels*, 192 P. 2d 788 (1948).

In the civil complaint which she filed against Prujansky and Coleman, petitioner alleged among other things that:

defendants were indebted to [her] in the sum of $28,000 * * * which debt the defendants fraudulently contracted by falsely, fraudulently and deceitfully representing to * * * [her] that they would pay over said sum to an escrow * * *, by means of which false representations they induced * * * [her] to pay over to defendants the said sum of money, whereas the defendants when the said debt was contracted did thus obtain said sum of money with the intent of cheating and defrauding * * * [her] out of the same.

By admitting the truth of this allegation, Prujansky conceded he obtained the $28,000 from petitioner under false pretenses; which, as noted above, constitutes theft under California law. In our opinion this admission is sufficient proof, under the circumstances of this case, that petitioner sustained a $28,000 theft loss during 1954.

In reaching this conclusion, we have rejected respondent's contention that Prujansky's testimony[3] during the course of the instant proceeding indicated he only intended to admit civil liability for the amounts received from the petitioner. By stipulating to the truth of the above allegation, Prujansky admitted that he took the moneys from petitioner by means of false pretenses with the intention of cheating and defrauding her out of the same. In our opinion, what Prujansky did constituted the crime of theft under California law. That he may have made this admission because he felt petitioner was entitled to have her own money back, or might conclude that he was trying to "beat her" in no way vitiates the admission itself. In fact, this explanation on his part seems to us to be beside the point.

But respondent further argues that the Prujansky stipulation was "readily available in the subsequent investigation into Frances' criminal charges." Apparently he would have us conclude that the Superior Court had the benefit of this stipulation when it dismissed both the information and the indictment filed against Prujansky and Coleman. Neither party offered evidence on this point. In fact we have only the agreement of counsel that the dismissals were made on the basis of the defendants' motions under section 995 of the California Penal Code; and, insofar as the indictment was concerned, that its dismissal related to the court's conclusion that the defendants had been indicted without "reasonable or probable cause."

---

[3] When asked what his purpose was in executing the stipulation, Prujansky replied: A. * * * Frankly speaking, I thought that Mrs. Monteleone was entitled to what she had coming, and I figured that I didn't want her to think I was trying to, in any way, beat her. So the attorney asked me—we meet at the attorney's office, and he asked me if I would sign this statement regarding paying her back, and I said I sure would.

694

Section 995 of the Penal Code [4] provides in part that an indictment must be set aside upon defendant's motion where it is found that the defendant has been indicted without reasonable or probable cause. In construing this section, California courts have held that probable cause means such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. *People* v. *Nathanson*, 284 P. 2d 975 (1955). In a hearing on any motion under section 995, the question of the guilt or innocence of the defendant is not before the court, but only whether there was evidence sufficient to support the indictment or commitment. *People* v. *Platt*, 268 P. 2d 529 (1954). In the circumstances of this case we regard the dismissal of both the indictment and the information to be immaterial to the question now before us.

Moreover, a criminal conviction is not a necessary element in a taxpayer's proof in this Court that a theft loss has been sustained. See for example, *Warner L. Jones*, 24 T.C. 525 (1955), where the loss was shown to have been "occasioned by circumstances clearly indicating theft." We think petitioner has proven equally convincing circumstances here, and therefore conclude that she sustained a theft loss during 1954 in the amount of $28,000.

Reviewed by the Court.

*Decision will be entered under Rule 50.*