OPINION Raum, Judge: Two issues must be decided: (1) Whether petitioner suffered a deductible “theft loss” under section 165 as a result of the amending of the employee pension plan of which he was a beneficiary; and (2) whether petitioner realized a long-term capital gain pursuant to section 402(a) and the regulations thereunder upon his termination of employment because his vested interest in the pension plan became immediately available to him. 1. Section 165 of the Code provides for the deduction of losses arising from theft. But the word “theft” extends only to the “criminal appropriation of another’s property to the use of the taker.” Edwards v. Bromberg, 232 F. 2d 107, 110 (C.A. 5). Petitioner argues that such a criminal appropriation has taken place under the facts. presented here while the Commissioner denies the existence of any loss by theft or otherwise. We agree with the Commissioner. Whether a loss has occurred by reason of the criminal activities of another depends upon the law of the jurisdiction in which the loss is said to have occurred. Michele Monteleone, 34 T.C. 688. Petitioner’s evidence, far from establishing a violation of New York’s criminal laws, clearly indicates that the amendment of Buensod’s pension plan did not violate any of the criminal laws of New York. We refer specifically to petitioner’s lengthy correspondence with the New York State offices of the department of insurance and the attorney general. These authorities flatly declined to prosecute any of the parties accused of wrongdoing by petitioner. Further, the department of insurance informed petitioner that in substance his claim was without, merit. Such evidence surely cannot fulfill petitioner’s burden of showing that he suffered a loss due to the criminal activities of Buensod, Phoenix, or any other person or persons connected with the company pension plan. At best, petitioner had only a civil cause of action in respect of the wrongs which he claims he suffered. Moreover, we are not convinced that any wrongdoing occurred here which can be said to have caused the petitioner any loss. The pension plan in issue was subject to amendment under the terms of the pension trust indenture. Such an amendment was duly approved by the Pension Plan Committee. Petitioner’s rights were not diminished by this change as his vested interest in the plan as of the time of the amendment was secured. Petitioner had no irrevocable property right in the policies themselves; his interest was only in an amount representing the cash value of his interest in the plan, which was in no way affected by the amendment. A more significant weakness in petitioner’s position is that Phoenix offered to reinstate the very policies which petitioner claimed were wrongfully taken from him, provided, of course, that petitioner paid the premiums due thereon from June 20, 1963, the date the plan was amended. Thus, the policies allegedly stolen from petitioner were in fact made available to him even though they no longer were held by the pension trust. This makes irrelevent petitioner’s claim that he was deprived of the opportunity of preventing a lapse of the policies because of the retroactive operation of the amendments to the plan. In fact, petitioner could have taken over the policies during 1964, the year in which petitioner claims he suffered their loss. Petitioner contends, however, that Phoenix’s offer to reinstate the policies was unfair because he could have assumed the policies only by applying the accumulated vested interest as shown on June 20, 1963, to the premiums due on such policies. He argues that his vested interest should have been calculated as of December 20, 1963, rather than June 20, 1963, because Buensod paid premiums to December 20, 1963, and he reported as income a part of those premiums up to that date. There is no basis for this position. Petitioner reported income only on that portion of the premium which was allocated to term life insurance coverage, which coverage he received up until Deeeinber 20, 1963. Petitioner did not report any income in 1963 with respect to the remaining portion of the premium paid by Buensod. Whether that portion of the premium should have accrued to petitioner was at best a highly debatable matter in light of the modification of the plan as of June 20,1963. We also note but need not pass upon the Government’s further alternative contention that even if a theft loss is found to have occurred, the amount of the loss must be limited to the adjusted basis of the property stolen. Income Tax Begs., secs. 1.165-1 (b) (1) (i) and 1.165-8 (c). In the present case the maximum amount invested by petitioner in the policies cannot exceed $872, and indeed it is doubtful that he had any adjusted basis, since the amount thus chargeable to him represented merely the cost of term life insurance which had already been fully exhausted. 2. Section 402(a), I.B.C. 1954, requires the inclusion in income of amounts actually distributed or made available to a distributee of an employee trust where the contributions to that trust were not taxable to the employee at the time they were made. The regulations under this section consider such amounts gains from the sale or exchange of a capital asset held for more than 6 months. Income Tax Begs., sec. 1.402(a)-! (a) (6) (i) and (ii). From the time of petitioner’s termination of employment with Buensod in February 1964, he was immediately entitled to receive $6,426, his vested rights, as of June 20,1963, in the six insurance policies issued on his behalf. Even though petitioner was on the cash basis, he had an unrestricted right to such amount. Since petitioner’s vested rights arose as a result of Buensod’s contributions, which were not taxable to petitioner at the time they were made, he is properly taxable once that amount was “made available” to him. Sec. 402(a). This result is not altered simply because petitioner believed the total to be inadequate. It is clear that at least $6,426 was available to him without dispute and that petitioner’s belief that a larger sum was due was without foundation. Accordingly, the vested rights of petitioner under the plan were taxable to him as a long-term capital gain in 1964, the year in which the funds became available to him. Decision will be entered for the respondent.