Landis G. Brown v. Commissioner.
Brown v. Commissioner
Docket No. 5487-69 SC.
United States Tax Court
T.C. Memo 1971-60; 1971 Tax Ct. Memo LEXIS 280; 30 T.C.M. (CCH) 257; T.C.M. (RIA) 71060; March 29, 1971. Filed Landis G. Brown, pro se, P.O. 428, Southport, N.C.Frank D. Armstrong, Jr., for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: Respondent determined a deficiency in petitioner's Federal income tax for year 1965 in the amount of $696.66. The issues are whether the petitioner is entitled to a theft loss deduction in the amount of $7,951.88 in the taxable year under the provisions of section 165(c)(3) of the Internal Revenue Code of 1954, [1] and whether petitioner is entitled to a refund because of an alleged overpayment of income taxes in 1963 in the amount of $1,067.17. *281 Some of the facts have been stipulated and they are so found. Petitioner resided at Southport, North Carolina at the time he filed his petition in this case. Landis G. Brown, a practicing physician, and Nell G. Brown (hereinafter referred to as Nell) were married on November 4, 1943. Two children, Donald Wayne Brown [2] and Landis Wade Brown, were adopted during their marriage. In 1957 petitioner and Nell separated because of marital problems. Nell sued the petitioner for a legal separation and asked for custody of the two children and for support and maintenance for herself and the children. Petitioner and Nell entered into a property settlement on July 12, 1957, whereby he was to pay her $7,500 in a lump sum and $400 a month as alimony and $75 a month for the support of each child until the child reached 18 years of age and to transfer to her his interest in an Oldsmobile automobile. Under the settlement Nell was to transfer to Dr. Brown her interest in certain real properties and in a Plymouth automobile. Furthermore, Dr. Brown was to give Nell a bill of sale for the household and kitchen furniture to be selected by Nell having a then market value of $5,000. On July 25, 1957, a *282 consent judgment was entered in that suit approving the property settlement and decreeing that the plaintiff and the defendant should live separate and apart. It also awarded to Nell the permanent custody of the children and provided for the payment of alimony and support for the children as provided in the property settlement. The terms of the property settlement were carried out. After the separation Nell and her two children went to live in Southern Pines, North Carolina. In 1957 Dr. Brown constructed a new house in Southport, North Carolina. In 1958 petitioner and Nell were reconciled and on May 16, 1958, entered into a reconciliation agreement which provided, among other things, that in case there should be another separation the terms of the consent judgment would be reverted to. After their reconciliation Nell moved her furniture from the house in Southern Pines to the new home in Southport. She also purchased with her own funds at least $2,600 worth of living room furniture which was used in the new home. 258 The total value of Nell's furniture was approximately $7,600 at *283 or about the time of reconciliation. On June 8, 1958, the unexecuted portion of the 1957 separation agreement was vacated by court order. Nell and the children came to live with the petitioner in the new home in Southport with the understanding that when the existing debts were paid off and savings were adequate, either another new home would be built or extensive additions would be made to the home built by Dr. Brown in 1957. The petitioner and Nell again encountered marital difficulties and were again separated on February 12, 1964 when Dr. Brown left home. In February 1964 Nell sued the petitioner for alimony without divorce. A jury trial was held and after verdict the court ruled against Nell in September 1964. In the latter part of May 1965, Dr. Brown brought suit for absolute divorce from Nell on the grounds of having lived separate and apart from her continuously for one year prior to commencement of the suit. The divorce was granted by the court on August 30, 1965. On August 10, 1965, Nell, through her attorney, made a demand on Dr. Brown for the return of $7,500 she claimed to have given to him upon their reconciliation. The claim was denied by Dr. Brown through his attorney. *284 On or about September 13, 1965, Nell had all the furniture, rugs and drapes in the house in Southport moved by van to a carrier's warehouse in Wilmington, North Carolina. Dr. Brown observed the removal and notified his attorney of it. Neither Dr. Brown nor his attorney filed a complaint with the police. Sometime later the furniture was shipped to Louisiana. Nell continued to retain possession of the house after September 13th. On September 17, 1965, petitioner filed an application for a writ of assistance seeking to remove Nell from the premises located in Southport, North Carolina and to be put in possession. On September 20, 1965, the court entered its order granting the writ. Petitioner did not at that time apply to a court for a writ of assistance to obtain possession of the furniture in the possession of Nell. The petitioner was aware of the temporary storage of furniture at the carrier's warehouse. He had his attorney contact the carrier officials and his attorney was told that the warehouse officials would notify him if the furniture was to be moved. The furniture was moved but the promised notice was not given. Petitioner took no legal steps against the carrier to recover *285 the furniture. Petitioner's counsel drafted an application for a writ of assistance to regain possession of the furniture but could not ascertain the location of the property within the State. Petitioner was advised by legal counsel not to institute legal proceedings to recover the furniture after its removal from the State because of the expense that such action would involve. Petitioner contends that the value of the furniture and furnishings in the home in Southport was approximately $8,051.88 on April 14, 1967. He bases this contention on a statement in an exhibit attached to his petition of three persons allegedly familiar with the particular furniture and qualified to make the appraisal. None of these three persons saw the property later than the Christmas of 1964. He also relies on a schedule of furniture and furnishings attached to his amended return purporting to show the cost of each listed item of furniture or furnishings in total amount of $17,893.06. We do not agree that the listed inventory establishes the cost of the furniture or furnishings or that the opinions of those three establish their value at any date pertinent to this proceeding. The house and its contents *286 were covered by an insurance policy issued jointly to the petitioner and Nell. The policy contained a theft clause provision. No claim was filed under the insurance policy for theft of furniture and household goods. On January 15, 1966, petitioner filed his Federal income tax return. No claim was made in that return for a theft loss deduction. On February 16, 1968, approximately two years later, the petitioner filed an "amended" 1965 Federal income tax return in which he claimed a theft loss deduction. Not only did the petitioner take no legal action against the carrier to prevent shipment of the furniture, he also did not bring any action, civil or criminal, against either his wife or the carrier on the allegations of theft. Dr. Brown concedes that Nell owned the furniture she received at the first separation. However, he contends that, because he made payments on the house in which she lived in Southern Pines and because he paid her income tax and made other payments on her behalf subsequent to the transfer of the furniture to her and after their reconciliation, he in effect repurchased the furniture. We do not agree with that contention. 259 In order to establish a theft *287 loss petitioner must prove that the articles stolen were the property of the petitioner at the time of the theft. Petitioner had not been in his home since February 12, 1964, more than a year prior to the removal of the furniture and furnishings by Nell. It is impossible on the state of this record to determine whether any or all of the items claimed by the petitioner were in existence on the date of the alleged theft. Even if they existed, petitioner's proof falls far short of establishing which items were his property and which were Nell's. To the extent that he does identify a few items he has not satisfactorily established their cost, value or existence at the time of the alleged taking. At the trial petitioner was warned that his proof in this regard was inadequate. Finally, while he contends the fair market value of the property was approximately $8,000 it is equally clear from the record that the value of Nell's interest in the furniture was approximately $7,600. The difference in value is negligible when one considers the bases upon which these valuations are predicated. This is particularly so since the Browns are in dispute over whether any part of the $7,500 lump sum payment *288 at the time of the first separation was returned to Dr. Brown. Whether a "theft" has been committed is to be determined under local law. Michele Monteleone, 34 T.C. 688 (1960). North Carolina does not have a statutory definition of larceny. It follows the common law. The common law doctrine holds that a wife who takes her husband's property without his consent does not commit larceny or embezzlement. George Ungar, 18 T.C. 688 (1952) affd. 204 F. 2d 322 (C.A. 2, 1953). In any event, petitioner has failed to prove that Nell's removal of the furniture and furnishings was with felonious or fraudulent intent. In the judgment in the original separation suit dated July 25, 1957, the court found that Nell was a person of good character and enjoyed a good reputation in Southport. There is no presumption that a person has been guilty of larceny at any time. In fact, the failure of petitioner to complain to public authorities of the alleged "theft" at the time of its occurrence, his failure to claim a theft loss under the insurance policy and his two-year delay in claiming a "theft" loss for income tax purposes, all lead to the conclusion that petitioner *289 acquiesced in the taking of the furniture by Nell in 1965. See Grover Tyler, 13 T.C. 186(1949). Finally, under the reconciliation agreement of May 16, 1958, Nell upon the second separation would be entitled to take up to $5,000 in value of Dr. Brown's furniture and furnishings to be selected by her plus the furniture bought with her own money. In short, we find no "theft" of Dr. Brown's property in the taxable year. Petitioner also claims a refund of tax paid in 1963 based on the failure of his wife to file a joint return with him for that year. The statutory notice on which this suit is based relates only to the taxable year 1965. Accordingly, this Court has no jurisdiction with respect to the claimed refund for the taxable year 1963. Reviewed and adopted as the report of the Small Tax Case Division. Division will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. Referred to as Donald Taylor Brown in Exhibit 3-C attached to the Stipulation of Facts.↩