ENOS E. and LULA BELLE KERR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kerr v. Commissioner
Docket No. 3519-72.
United States Tax Court
T.C. Memo 1973-109; 1973 Tax Ct. Memo LEXIS 178; 32 T.C.M. (CCH) 490; T.C.M. (RIA) 73109; May 14, 1973, Filed Enos E. Kerr and Lula Belle Kerr, pro se. Frank C. Hider, Jr., for the respondent FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1968 in the amount of $133.52. The issues for decision involve whether petitioners are entitled to (a) a theft loss deduction for the claimed illegal taking of part of their land, and additional deductions for (b) taxes, (c) interest, (d) employee business expenses, and (e) the loss of income from certain rental property. 2 FINDINGS OF FACT Petitioners Enos E. Kerr (hereinafter Kerr) and Lula Belle Kerr are husband and wife. Utilizing the cash-receipts-and-disbursements method of accounting, they *180 filed a timely joint Federal income tax return for 1968 with the Southeast Service Center, Chamblee, Georgia. At the time their petition was filed with this Court, they were legal residents of Miami, Florida. (a) Theft Loss Deduction. In 1946 petitioners purchased 10 acres of land from Frank C. Palmer and his wife for $500 an acre and received a warranty deed covering the property. Palmer had acquired the land as part of a larger tract from H. W. Adelberger, Jr., and his wife for an unspecified price in 1945. The land was located in Dade County, Florida. The northern portion of the property was bordered by North Kendall Drive. On April 21, 1951, petitioners sold one-half of their tract fronting on North Kendall Drive to Merroll F. Self and his wife for an unspecified price, retaining the corner tract bordering on North Kendall Drive and 60th Avenue. The deed given by petitioners to the Selfs described the conveyed property as a fraction of "Section 1, Township 55 South, Range 40 East, less the North 35 feet thereof for 3 road purposes" (emphasis added). On an engineering plat dated January 12, 1946, prepared for Palmer by the Biscayne Engineering Company (hereinafter *181 Biscayne) prior to his sale of part of this tract to petitioners, there is a reference to a 35-foot right-of-way on the portion of the property fronting on North Kendall Drive. There is a similar designation on another engineering plat dated December 9, 1955, prepared for Kerr by Biscayne, relating to the portion of the property owned by petitioners. In 1955 Kerr was advised by a representative of Biscayne that a fence petitioners were planning to erect on the northern portion of their property should be set back 35 feet from the center of North Kendall Drive. Otherwise, Biscayne advised, the fence would have to be moved when the county widened the road. Kerr followed this advice. At the time petitioners purchased this land, the road designated as North Kendall Drive was approximately 20 feet wide. On two or three separate occasions between that time and 1965, the county has used portions of the property subject to the right-of-way to widen the road. During 1968 the width of the road was between 38 and 40 feet. When petitioners bought this property in 1946, they obtained an abstract of title, and they purchased title 4 insurance from a company which has since been *182 taken over by another organization. They were not aware in 1946 that the county had a road right-of-way along the north side of their property. Their abstract and title insurance policy were held by a bank from 1955 until 1962 as security on a loan. When they were returned to petitioners in 1962, the documents mentioned this right-of-way. Petitioners' copy of the original deed has since been lost. Not until the early 1960's did petitioners first become aware that the county was claiming the road right-of-way along the north side of their property. During an unspecified period, petitioners attempted to locate Palmer but were unsuccessful. In the yearly property tax notices that petitioners received from Dade County prior to 1968, there was no mention of the county's right-of-way in the description of their land. Prior to 1951 these notices referred to 10 acres of land, and following the sale of part of their land in 1951, the notices referred to 5 acres. In the 1968 property tax notice, the description of their land referred to a 35-foot exclusion on the northern and southern boundaries 5 of their property [1] and indicated that they owned 4.47 acres of land. *183 The county has had a right-of-way, 35 feet wide, along the northern boundary of petitioners' property since about 1940. The deeds on record in Dade County, at the time of the trial, from the Adelbergers to Palmer and from the Palmers to petitioners, covering petitioners' 5 acres of land, both refer to this right-of-way. After petitioners received the 1968 property tax notice, they requested the successor of the organization which had prepared the abstract of title in 1946 to prepare a new one. The new abstract confirmed the existence of these rights-of-way, and the company's president advised petitioners that the country's claims were lawful. Petitioners have not filed a formal claim under their title insurance policy, and they have not been reimbursed for the loss of any of their land. Petitioners estimate that in 1968, their land was worth $8,500 per acre - the property's assessed value for local 6 property tax purposes. Although they were of the opinion that land worth $4,505 was "stolen" from them in 1968, they deducted only $1,135 as a theft loss in their 1968 tax return since they believed this was all that was needed to eliminate their taxable income for that *184 year. This deduction was denied in the notice of deficiency. (b) Deduction for Taxes. During 1968 petitioners paid real estate taxes in Florida in the amounts of $430.97, $363.68, and $51.87, respectively, to Alachua County, Dade County, and Leon County. The Alachua County tax was paid on rental property located in Gainesville, Florida. They also paid $103 in local sales taxes, plus $27.40 in telephone taxes, $33.97 for the Gainesville City utility tax, and $34 to the Dade County Waste Division. In their 1968 tax return, petitioners deducted the Alachua County real estate tax as a rental expense. Although the other amounts referred to above were not deducted in their 1968 return, petitioners did assert a claim to those deductions prior to the issuance of the notice of deficiency and at the time of the trial. The notice of deficiency permitted deductions for all the above-described real estate and sales taxes, allowing the Alachua County 7 real estate tax as a rental expense. The other claimed deductions for taxes were disallowed. (c) Deduction for Interest. Petitioners paid interest in the amount of $340.65 during 1968. In addition on March 12, 1969, they *185 paid interest in the amount of "$199.97, part of which was actually incurred in 1968. In their 1968 return, they claimed no deduction for interest expense. However, the notice of deficiency allowed them an interest deduction of $340.65. (d) Deduction for Employee Business Expenses. Throughout the period in controversy, Kerr was employed by the State of Florida, Department of Agriculture, as an inspector. In this position he was headquartered at his home and used his own automobile to travel to the various service stations and warehouses which he inspected. The State reimbursed him for his business mileage at the rate of 10 centers per mile. In computing the amounts of the reimbursements, the total mileage he had driven during each day was reduced by 36 miles. This latter figure approximated the combined distance from his home to his first duty stop and from his last duty stop to his home. During 1968 he drove a total of approximately 15,114 miles of reimbursable travel. 8 Although petitioners did not deduct any amounts for employee business expense in their 1968 return, they claimed such a deduction in the amount of $760.90 prior to the issuance of the notice of *186 deficiency and at the time of the trial. Petitioners computed this figure by deducting 5 cents for each of the business miles Kerr drove in 1968. In the notice of deficiency respondent allowed a deduction for employee business expense to the extent of $409.70. (e) Deduction for Loss of Income From Rental Property. In November 1967 petitioners' rental property in Gainesville, Florida, was damaged by a construction company's bulldozer. Throughout the period in controversy, the property did not generate any income. From the date of that incident through 1970, petitioners were attempting to recover from the construction company and insurance companies for the damage to their property. In their 1968 return, petitioners deducted $600 as a loss of income from their investment in their rental property. They computed this figure by assigning to their property a value of $10,000 and estimating that if this sum had been available to them in 1968, they would have earned $600 from it. The notice of deficiency denied this deduction. 9 OPINION
(a) Theft Loss Deduction. As we understand petitioners' position, they argue that Dade County stole part of their land in 1968 *187 when the property tax notice reflected for the first time that they owned less than the 5 acres which had been shown in previous notices. Petitioners contend that the county did not own rights-of-way along the boundaries of their property and that the reduction of their acreage in the 1968 tax notice was the culmination of a falsification of county records to indicate that such rights-of-way did exist. They do not claim that the county actually took possession of any of their land in 1968. We do not question petitioners' sincerity in their belief that someone has tampered with the Dade County records and that they have lost title to some of their property. However, the trial record does not establish that this is so. To the contrary, as reflected in our Findings, it appears that the county's claim to these rights-of-way predate petitioners' purchase of this property. Since there was no theft in 1968 under Florida law, there can be 10 no deduction under section 165. [2]Michele Monteleone, 34 T.C. 688, 692-693 (1960). *188 (b) Deduction for Taxes. Section 164 [3] allows a deduction for various State, local, and foreign taxes that are paid or accrued within the taxable year, cf. sec. 1.164-1(a), Income Tax Regs. 11 Respondent has allowed a deduction for the Dade County and Leon County property taxes and for the local sales taxes that petitioners paid during 1968. Respondent has also allowed a deduction for the Alachua County property tax as a rental expense. We do not think petitioners are entitled to any further deductions for taxes except the Gainesville City utility tax. This expenditure was incurred in connection with petitioners' rental operation in Gainesville, and the record adequately verifies this claim. Petitioners are 12 entitled to deduct this "utility tax" as an expense of their rental business. *189 In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212 (relating to expenses for production of income.) * * * There is nothing in the record to show that the telephone taxes were incurred in connection with petitioners' rental business, nor is there any evidence to show that this expenditure was anything other than a nondeductible Federal excise tax. Sec. 4251; sec. 1.164-2(f), Income Tax Regs. Likewise, it has not been shown that the amounts paid to the Dade County Waste Division were other than nondeductible service charges. Louis M. Roth, 17 T.C. 1450, 1454 (1952); cf. sec. 1.164-8(c), Income Tax Regs. Petitioners are not entitled to deductions for these amounts. (c) Deduction for Interest. Interest paid or accrued within the taxable year is deductible under section 163. [4] Since petitioners are cash basis taxpayers, however, they are entitled to deductions only for the interest paid during the taxable year. Sec. 1.461-1(a)(1), Income Tax Regs.[5] Petitioners *190 paid only 13 $340.65 in interest during 1968, and they have been allowed this amount as a deduction. They are not entitled to any further interest deductions for 1968. (d) Deduction for Employee Business Expenses. Petitioners deducted as an employee business expense under section 162, 5 cents for each reimbursable business mile Kerr drove his automobile in 1968. [6] Kerr was reimbursed 10 cents per mile by his employer, and the amount of his reimbursement was not included in gross income. Respondent allowed a deduction of $409.70, computed in accordance with Rev. Proc. 66-10, 1966-1 C.B. 622. Since petitioners did not show that their actual expenses exceed *191 the amount allowed by respondent, they are not entitled to any additional automobile expense deductions. (e) Deduction for Losses of Income From Rental Property. In November 1967 petitioners' rental property was damaged, and throughout 1968 it did not generate any income. During this period petitioners were engaged in efforts to obtain recovery for that damage. In their 1968 return, they deducted $600 for the lost use of this investment. This was the amount they felt could have been generated if their investment had been available to them during the year. In order for a loss to be deductible, it must fit within the confines of section 165, quoted above in footnote 2. That section covers only actual losses of tangible or measurable property which are "not compensated for by insurance or otherwise." It does not allow a deduction for the loss of anticipated profits *192 or income. J. G. Boswell Co., 34 T.C. 539 (1960), affd. 302 F.2d 682 (C.A. 9, 1962), certiorari denied 371 U.S. 860 (1962). Thus, respondent was correct in denying this deduction. Accordingly, Decision will be entered under Rule 50. Footnotes
1. The county's decision in the early 1960's to assert ownership of a right-of-way along the southern boundary of petitioners' property was based on its investigation of various documents predating petitioners' purchase of this land. Prior to 1968 petitioners fenced the area covered by this right-of-way. Petitioners have not contended that the county took actual possession of land subject to either of these rights-of-way during 1968. ↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * (c) (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * * * * ↩
3. SEC. 164. TAXES. (a) General Rule. - Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (1) State and local, and foreign, real property taxes. (2) State and local personal property taxes. ((3) State and local, and foreign, income, war profits, and excess profits taxes. (4) State and local general sales taxes. (5) State and local taxes on the sale of gasoline, diesel fuel, and other motor fuels. ↩
4. SEC. 163. INTEREST. (a) General Rule. - There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. * * * ↩
5. Sec. 1.461-1 General rule for taxable year of deduction. (a) General rule - (1) Taxpayer using cash receipts and disbursements method. Under the cash receipts and disbursements method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid. * * * ↩
6. Petitioners have properly not claimed that they are entitled to a deduction for Kerr's daily mileage from his home to his first duty stop and from his last duty stop to his home. William L. Heuer, Jr., 32 T.C. 947 (1959), affirmed per curiam 283 F. 2d 865↩ (C.A. 5, 1960). 14