EDWARD L. JERNIGAN and VIRGINIA M. JERNIGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jernigan v. Commissioner
Docket No. 7882-78.
United States Tax Court
T.C. Memo 1981-44; 1981 Tax Ct. Memo LEXIS 704; 41 T.C.M. (CCH) 811; T.C.M. (RIA) 81044; February 2, 1981. Edward L. Jernigan, pro se. Mark D. Petersen, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in income tax of $ 706 for the taxable year 1975. The issue for decision is whether petitioners are entitled to a theft loss deduction. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. At the time the petition in this *705 case was filed, petitioners were residents of Waxahachie, Texas. During July of 1975, a Mobileliner motor home was located on a lot at the Rolling Oaks Trailer Court ("Rolling Oaks"). This mobile home, which had been sold to petitioners' son, Michael Jernigan, contained various items of petitioners' furniture and personal effects. The owner-developer of Rolling Oaks is Billie Jo Rash. Its general manager is W. L. Breault. Ben Baker, president of Baker Mobile Home Sales, Incorporated, sold the Mobileliner motor home to Michael Jernigan. Whenever a buyer of a mobile home becomes delinquent in making payments on the home, and the lending institution desires repossession of the home, it is the general practice of Baker to assist the lender in repossessing the property. At some point during the latter portion of July of 1975, Baker spoke to an employee of the institution which was collecting Michael Jernigan's account, First National Bank of Fort Worth. This employee informed Baker that since Michael Jernigan was delinquent in making payments, he was interested in the repossession of the mobile home. Baker subsequently spoke to Mrs. Rash concerning a possible repossession of *706 the Mobileliner as it usually was his custom to work with the park operator in such cases. On the evening of either July 28, or 29, 1975, several people including Mrs. Rash were at the location of the Mobilliner trailer home. Mrs. Rash had informed these people that the Mobileliner was going to be repossessed and that it was necessary to remove from it the various items of furniture and other personal effects for safekeeping. These individuals thus assisted her in removing these items. Breault, the manager, came upon this scene and also assisted in removing a refrigerator, a stove and some aquariums. The furniture and other personal effects from the Mobileliner were taken to the pump house for the Rolling Oaks swimming pool where they were stored in large boxes. The next day Breault informed Edward Jernigan ("petitioner") that his furniture and other personal items were located in the locked pump house and that it would be necessary to see Mrs. Rash if he wanted to obtain access to them. Breault refused to open up the pump house since he did not want to get involved in what he believed to be essentially a dispute between petitioner and Mrs. Rash. Also on that day, an individual *707 arrived with a truck to repossess the Mobileliner. Petitioner spoke with the driver and he left without taking the mobile home. The Mobileliner was never repossessed. In a letter dated September 22, 1975, Mrs. Rash requested petitioner to remove the various items of personal property which were still in storage at Rolling Oaks. Mrs. Rash urged that prompt action be taken toward effecting removal of these items as Rolling Oaks did not have the space or facilities to store them. She stated that if such arrangements were not made prior to October 25, 1975, then the property would be donated to the local fire department. On October 18, 1975, petitioner filed a complaint against Mrs. Rash in Van Zandt County, Texas. In that complaint, petitioner alleged that Mrs. Rash had perpetrated a theft of over $ 200 of his property. Thereafter, Mrs. Rash informed her attorney, Gordon Wynne, that a complaint had been filed against her. Wynne advised her that she should strive to return the property to petitioner in a mutually satisfactory way. In the absence of an agreeable arrangement, Wynne told Mrs. Rash to retain the property until the matter had been resolved by the Criminal Court. *708 W. E. Eblen, the Criminal District Attorney for Van Zandt County, spoke with the various interested parties, viz., Mrs. Rash, petitioner, Wynne and the sheriff, after the complaint had been filed. Mrs. Rash informed him of her willingness to return petitioner's property. Eblen relayed this information to petitioner and requested that he make arrangements to resolve the matter. At this point Eblen realized that the dispute was more in the nature of a misunderstanding than a criminal matter. This was Eblen's last involvement in the case. He assumed that the situation had been resolved since he never received the complaint, an offense report or any other correspondence from the Court or the sheriff's department. As of March 28, 1977, the property was still in Mrs. Rash's hands. On that date Wynne sent a letter to petitioner advising him that Mrs. Rash was still in possession of the various items of petitioner's personal property. Wynne stated that Mrs. Rash no longer wished to store these items and that she would deliver them for sale to the local fire department within ten days. In a letter dated March 30, 1977, petitioner responded to Wynne's March 28th letter by stating *709 that Mrs. Rash never had permission to enter the Mobileliner. In that letter, petitioner also stated that he did not become aware of Mrs. Rash's entrance into the Mobileliner until after all of his possessions has been removed. Petitioner stated he would arrange to pick his property up if Wynne informed him what settlement or recovery was being offered. In a reply letter to petitioner, dated April 1, 1977, Wynne wrote that Mrs. Rash had authorized Mrs. Betty Hastins [sic] to provide for petitioner's entrance to the property where his items were being stored. Wynne requested that petitioner contact her (a phone number was listed in the letter). In a letter dated April 4, 1977, to Wynne, petitioner requested information as to the specific items he was to recover. Petitioner stated that removal of a "large storage building [sic]" would require his having a truck and a helper. Wynne wrote petitioner a letter dated April 20, 1977, wherein he informed petitioner that Mrs. Rash was in Europe and that she would get in touch with Wynne when she returned. Mrs. Betty Hastings was the president of the Rolling Oaks Property Owners Association during April 1977. Mrs. Rash told *710 her to let petitioner into the pump house to pick up his property if he called since she was going to be out of the country. Petitioner never called to request entrance to the pump house. Subsequently, Mrs. Rash told Mrs. Hastings that she would turn over petitioner's belongings to the property owners' association so that they could be sold when her lawyer gave the go ahead. This occurred in August of 1978. Mrs. Hastings took the property out of the pump house and prepared a list of the various items. She discovered that may of the items were worthless or in a state of disrepair. The net proceeds received from the sales of these items was approximately $ 105. OPINION On their 1975 tax return, petitioners claimed a theft loss in the amount of $ 8,022. Petitioners contend that they are entitled to a theft loss deduction under section 165(c)(3) as a consequence of the removal of their property from the Mobileliner. The evidence adduced in this case does not support their contention. On of the requisite elements for claiming a theft loss is that the activity in question must constitute a crime under the law of the state where the loss was sustained. Paine v. Commissioner,63 T.C. 736 (1975), *711 affd. 523 F.2d 1053 (5th Cir. 1975). The absence of a criminal prosecution is not determinative. However, there must be a showing that the loss was "occasioned by circumstances clearly indicating theft." Monteleone v. Commissioner,34 T.C. 688, 694 (1960). The removal of petitioners' property by Mrs. Rash in late July of 1975 does not clearly indicate a theft within the purview of the law of Texas. Section 31.03 of the Tex. Penal Code ANN. tit. 7 (Vernon Supp. 1980), provides in pertinent part: § 31.03. Theft (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. (b) Appropriation of property is unlawful if: (1) it is without the owner's effective consent; or (2) the property is stolen and the actor appropriates the property knowing it was stolen by another. [Emphasis supplied.] Section 3101(3) of the Tex. Penal Code ANN. tit. 7 (Vernon 1974), provides: (3) "Deprive" means: (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner; (B) to restore *712 property only upon payment of reward or other compensation; or (C) to dispose of property in a manner that makes recovery of the property by the owner unlikely. Here, petitioner has failed to establish that Mrs. Rash's transfer of the property to the pump house was effected with an intent to withhold the property from petitioner permanently or for so extended a period that a major portion of the value or enjoyment was lost to petitioner. To the contrary, the relevant evidence demonstrates that the property remained on the premises of Rolling Oaks for purposes of safekeeping. Mrs. Rash' letter of September 22, 1975, evidences her desire that petitioner reclaim his property. It also appears that repeated requests were made by Mrs. Rash between, at the very latest, the date of said letter and at least until April of 1977. Moreover, theft losses are generally not deductible during any taxable year where there is a reasonable prospect of recovery. Section 1.165-1(d)(3) and 1.165-8(a)(2), Income Tax Regs. Thus, aside from any question of a theft under Texas law, petitioners could not have claimed a deduction in 1975 (or any year thereafter) because of Mrs. Rash's manifestations *713 of her willingness to return the property. Petitioners argue that some of the people who assisted Mrs. Rash in removing their property from the Mobileliner stole some of the various items while they were in the process of transferring the property to the Rolling Oak pump house. This contention is simply not supported by the evidence presented herein. There is nothing in the record to indicate that petitioners or their son witnessed the removal of their property from the Mobileliner. Further, since petitioners never made an attempt to recover the stored items from the pump house, it is evidence that their claim is one founded on sheer speculation. All things considered, it appears more likely that petitioners decided to abandon the property that had been removed from the Mobileliner. Accordingly, we hold that petitioners are not entitled to a theft loss for 1975. Decision will be entered for the respondent.