LUTHER R. AND CHRISTELLE T. MARR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marr v. Commissioner
Docket No. 8017-92
United States Tax Court
T.C. Memo 1995-250; 1995 Tax Ct. Memo LEXIS 252; 69 T.C.M. (CCH) 2837; June 12, 1995, Filed *252 Decision will be entered for respondent Luther R. Marr, pro se. For respondent: Mark Weiner. DAWSON, NAMEROFF
DAWSON; NAMEROFF
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1987 in the amount of $ 66,256. Respondent also determined that petitioners are liable for the addition to tax for negligence under section 6653(a)(1)(A) in the amount of $ 3,312.80, and section 6653(a)(1)(B) in the amount of 50 percent of the interest due on $ 66,256. In addition, respondent determined that petitioners are *253 liable for the addition to tax for substantial understatement pursuant to section 6661(a) in the amount of $ 16,564. The issues to be resolved are: (1) Whether petitioners are entitled to a theft loss of $ 186,517.66 in connection with the purchase of shares of stock of Quantech Electronics Corporation (Quantech); (2) whether petitioners are liable for the additions to tax for negligence; and (3) whether petitioners are liable for the addition to tax for substantial understatement. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners resided in Glendale, California. Quantech is a corporation whose stock was publicly traded in what is known as the over-the-counter market. The chairman of the board of Quantech was Henry Ginsberg (Ginsberg). Micronetics, Inc. (Micronetics) was a subsidiary of Quantech. Donald Duffy (Duffy) was a stock broker in the employ of Waldron and Company, Inc. (Waldron). Petitioner Luther R. Marr (hereinafter "petitioner" when used in the singular) has known Duffy since approximately 1974. Petitioner *254 made several small investments through Duffy prior to 1986. During 1983, Duffy recommended that petitioner purchase shares of Quantech at its initial public offering. Petitioner purchased some shares in Quantech at that time and subsequently made a small profit on a later sale of those shares. In May 1986, Duffy again recommended that petitioner purchase shares of Quantech. Duffy represented that Ginsberg was negotiating to sell Quantech, that Micronetics was making $ 1 million annually, and that petitioner would profit by an investment. At that time, petitioner bought 2,000 shares of Quantech for $ 7,660. Thereafter, Duffy continued to speak with petitioner and urge the investment of additional shares of Quantech. As a result, between the period of May 15, 1986, and December 31, 1986, including his initial purchase, petitioner purchased 87,000 shares of Quantech at prices ranging from $ 3.25 to $ 4 a share, for a total investment of $ 337,478.78. In addition, petitioner purchased another 27,500 shares of Quantech in eight transactions through another broker, Jerry Grady (Grady), from the period July 30, 1986, through November 28, 1986, at prices ranging from $ 3.75 to $ 5 *255 per share, for a total cost of $ 119,844.72. Thus, at the end of 1986, petitioner owned 114,500 shares of Quantech with a total cost of $ 457,323.50. Many of the purchases by petitioner through Duffy were made on margin. As a result of the dropping market value of Quantech shares in early 1987, petitioner was required to sell shares because of his inability to meet margin calls. During the period February 10, 1987, through March 24, 1987, petitioner sold 10,000 shares through Duffy at prices ranging from $ 1.75 to $ 2.75 per share, for total net proceeds of $ 19,764.12. The sale of these shares resulted in a loss of $ 19,559.66. During the period September 28, 1987, through October 15, 1987, petitioner sold 58,000 shares of Quantech through Grady at prices ranging from $ 1-5/8 to $ .6875 per share for total net proceeds of $ 41,703, for which shares petitioner had a cost basis of $ 233,357.22. Thus, the sale of these shares resulted in a loss of $ 191,654.22. At the end of 1987, petitioner still owned 62,797 shares of Quantech with a cost basis of $ 184,642.50. At the time of the purchase of each block of Quantech stock, petitioner relied upon Duffy's representations. It *256 is unclear how or why Grady was involved with these investments. Petitioner neither sought nor received any prospectus or other financial information, which was available, with regard to Quantech. Since no favorable news relating to Quantech had been released by early spring of 1987, and the quoted prices for Quantech stock steadily declined on the market, in May 1987, petitioner visited Ginsberg. During the visit by petitioner, Ginsberg made statements which petitioner believed warranted keeping his remaining Quantech stock holdings. At the time of petitioner's visit to Ginsberg, Quantech was selling on the open market at $ 2.25 a share. By the end of 1987, there was no market for shares of Quantech. In December 1987, petitioner brought an action against Duffy and Waldron before the Arbitration Board of the National Association of Security Dealers, Inc. Petitioner alleged misrepresentation and requested damages equal to petitioner's loss on Quantech shares of approximately $ 400,000, plus interest, punitive damages, and reasonable attorney's fees. This action was settled in 1989, and petitioner received $ 10,000 in full and complete settlement of all claims in the proceeding. *257 In August 1991, petitioner filed suit in Superior Court of the State of California in the County of Los Angeles, against Ginsberg, Quantech, Micronetics, et al., for damages of at least $ 250,000, plus interest, punitive damages and costs. This action was dismissed on January 23, 1992, on the ground that the action was barred by the statute of limitations. The record indicates that petitioner filed an appeal from said dismissal, but the disposition of the appeal is not contained in the record. Although petitioner did not avail himself of any financial data with regard to Quantech in making his investments, the record contains a copy of Quantech's annual report for the year ending March 31, 1986. This annual report reflects that while operating revenues increased from $ 5,218,811 at the close of fiscal year 1982 to $ 14,914,773 at the close of fiscal year 1986, Quantech had net losses in fiscal years 1985 and 1986, the latter being $ 1,304,042. In note 18 to the accountants' certification of the financial statements contained in the report, there is a breakdown of segments of Quantech's business. This note reflects, among other things, that the segment entitled "microwave and *258 communication products" had revenues in fiscal 1986 of $ 2,899,187, and an operating profit of $ 517,621. The record further contains a prospectus for a public offering for shares of Micronetics on September 24, 1987. This prospectus reflects, in part, that Micronetics had gross profits for the years ending March 31, 1985, 1986, and 1987 in the respective amounts of $ 1,661,879, $ 1,416,684, and $ 1,539,028, but net income or (loss) from operations in the respective amounts of $ 446,205, ($ 29,864), and $ 229,413. There is no indication that the public offering of Micronetics ever took place. On their 1987 Federal income tax return, petitioners claimed a theft loss on Schedule A in the amount of $ 186,517.66. [2] The tax return contains no further information with regard to this claimed loss. We also note that petitioner claimed a $ 3,000 capital loss on Schedule D, which appears to have been mainly derived from a short-term capital loss carryover from a prior year, the details of which, again, are not included in the record. The Schedule D does not contain any information as to the purchase and sale of Quantech stock. In the notice of deficiency, respondent disallowed the theft *259 loss explaining, in part: "If the amount of the loss is established, then it is further determined that you have failed to establish privity between the alleged takers and yourself. Also you have failed to establish that the alleged takers possessed guilty knowledge or felonious intent." The relevant language of section 165 provides: (a) GENERAL RULE. -- There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) LIMITATION ON LOSSES OF INDIVIDUALS. -- In the case of an individual, the deduction under subsection (a) shall be limited to -- * * * (3) * * * losses of property not connected with a trade or business * * * if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * (e) THEFT LOSSES. -- For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers *260 such loss. * * * (g) WORTHLESS SECURITIES. -- (1) GENERAL RULE. -- If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.
Petitioner contends that he is entitled to a theft loss deduction under section 165(c)(3) for the amount of money he invested in Quantech stock. Petitioner's theory is that a corporate officer made false representations regarding the financial status of Quantech to stock brokers who passed those false representations on to potential investors including petitioner. These representations induced petitioner to purchase stock in Quantech. Subsequently, when the price of Quantech was falling, petitioner met with Ginsberg, who allegedly made false representations which induced petitioner not to sell his remaining shares, which in petitioner's view became worthless by the end of 1987. Theft loss deductions have been sustained by the Court in numerous cases in which the theft consisted of false representations made to the taxpayer which induced him to part with *261 his money or property. Nichols v. Commissioner, 43 T.C. 842 (1965); Monteleone v. Commissioner, 34 T.C. 688 (1960). However, whether or not the activity constitutes a theft is determined by the law of the State where the loss is sustained. Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956). An actual conviction for theft under State law is not a prerequisite for theft loss deduction. Vietzke v. Commissioner, 37 T.C. 504, 510 (1961). Because the alleged thefts took place in California, we look to California law to determine whether petitioner sustained a theft loss. See DeFusco v. Commissioner, T.C. Memo. 1979-230; see also Crowell v. Commissioner, T.C. Memo. 1986-314. In both DeFusco and Crowell, we held that the taxpayers were not entitled to theft losses as a result of open market purchases of corporate stock on the ground that there was no relationship between the alleged defrauder and the victim. California law requires an appropriation by the defrauder of the victim's property, *262 an essential element of theft that was lacking in those cases. Duffy, with the exception perhaps of commissions on the purchase of stock and sale of stock, did not obtain petitioner's property when petitioner purchased Quantech stock. Likewise, petitioner's property was not obtained by officers and directors of Quantech. Petitioner's property was obtained by the sellers of Quantech stock; i.e., petitioner paid the sellers for the stock. Finally, we know of no authority for the proposition that petitioner suffered a theft loss as a result of representations by Ginsberg which caused petitioner to not sell his Quantech stock. Moreover, section 1.165-(1)(d)(3), Income Tax Regs., provides, in part: However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which such reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which can be ascertained with reasonable certainty whether or not such reimbursement will be received.
As indicated, petitioner filed a claim against Duffy and Waldron for $ 400,000 in 1987, *263 which dispute was not resolved until 1989. Petitioner then filed a claim against Ginsberg, Quantech, and Micronetics, which may or may not have been resolved by 1992. Accordingly, even if there had been some theft loss incurred by petitioner with regard to these transactions in 1987, no deduction would be allowed in 1987, because petitioner has failed to establish that he lacked a reasonable prospect of recovery. [3]
Section 6653(a)(1)(A) imposes an addition to tax of 5 percent of an underpayment if any part of the underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes an addition to tax of 50 percent of the interest due on that portion of an underpayment attributable to negligence. Negligence is defined as the failure to do what a reasonable and ordinarily prudent person would *264 do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners also have the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner claimed a theft loss deduction without making any reasonable inquiry of tax professionals as to the merits of his contentions. Instead petitioner, an attorney, relied on California criminal cases that were out of context. We hold that petitioners are liable for the additions to tax for negligence. Section 6661(a) provides that a taxpayer is liable for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Petitioner bears the burden of proving that he is not liable for this addition to tax. Rule 142(a); King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 517 (1992). Section 6661(c) authorizes respondent to waive any part of the addition to tax imposed under section 6661 upon a showing by the taxpayer of reasonable cause for the understatement and that the taxpayer acted in good faith. The most important *265 factor in determining whether to grant a waiver is "the extent of the taxpayer's effort to assess his proper tax liability under the law." See Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988); sec. 1.6661-6(b), Income Tax Regs.
There is no evidence that petitioner's efforts to assess his proper tax liability were in good faith. Petitioner, an attorney, failed to investigate reasonably the law involving the deduction of theft losses. We therefore conclude that respondent did not abuse her discretion in declining to waive the addition to tax under section 6661. Accordingly, we sustain respondent's determination on this issue. In accordance with the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We have no information as to how this amount was computed.↩
3. In view of this holding, we need not consider the validity of petitioner's claim that the representations of Duffy and/or Ginsberg were fraudulent and not mere "puffery".↩