LAMAR A. MOSS & MAURINE E. MOSS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moss v. Commissioner
Docket No. 8546-73.
United States Tax Court
T.C. Memo 1976-56; 1976 Tax Ct. Memo LEXIS 347; 35 T.C.M. (CCH) 251; T.C.M. (RIA) 760056; March 1, 1976, Filed Lamar A. Moss, pro se. Marwin A. Batt, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' income tax for 1971 in the amount of $2,132.18. The two issues before us are whether the petitioners incurred a theft loss within the meaning of section 165(c)(3) [1] with respect to certain stock and, if not, whether the petitioners are entitled to a capital loss due to the stock's *348 worthlessness under section 165(g). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided at Milford, New Jersey at the time the petition was filed. Petitioners jointly filed their 1971 Federal income tax return with the District Director of Internal Revenue, Newark, New Jersey. Petitioner Lamar Moss (Moss) worked as a papermaker until his retirement on November 5, 1971. During 1969 petitioners bought 1,100 shares of the common stock of Serv Quik, Inc. (Serv Quik) for $17,348. Serv Quik was formed under the laws of Kentucky on July 31, 1968, and had its principal office at Richmond, Kentucky. Serv Quik operated fast food outlets under the franchised name of "Minnie Pearl's Chicken" and drycleaning outlets under various franchised names. A subsidiary, Serv-Quik One Hour Dry Cleaning Systems, Inc., was organized to franchise and license the drycleaning outlets and did enter into licensing agreements with other corporations. On November 4, 1968, Serv Quik filed a prospectus with the Securities and Exchange *349 Commission proposing to issue to the public a secondary offering of 250,000 shares of Serv Quik common stock. The prospectus indicated inter alia the highly speculative nature of the stock being offered, the extensive interest of management in Serv Quik's franchising and licensing transactions, as well as the contingent nature of Serv Quik's exclusive rights in its "Minnie Pearl's Chicken" franchises. Jay W. Kaufman, a director of Serv Quik, was a member of the partnership JayW. Kaufman & Co., New York, which was the sole underwriter of the stock offering. Moss became interested in investing in Serv Quik stock through one or more apparently favorable news items appearing in the Wall Street Journal. By telephone, Moss contacted brokers in New York and Boston in order to purchase the stock which was being traded in the over-the-counter market. Unsolicited and on Moss' initiative, petitioners bought Serv Quik common stock in March and April 1969, from two brokerage firms in lots as follows: (a) from Scheinman, Hochstein & Trotta--200 shares on March 26, 1969 for $3,246; 300 shares on April 3, 1969 for $4,869; 100 shares on April 3, 1969 for $1,623; (b) from Moores & Cabot--500 *350 shares on April 11, 1969 for $7,610. Neither brokerage firm had any connection with Serv Quik. In a letter to the stockholders of Serv Quik dated November 7, 1969, the company projected a loss for the first nine months of the fiscal year ending November 30, 1969, due to a change in accounting practice. Serv Quik now began to take into current income only those proceeds from franchise sales actually received; it had previously taken into current income proceeds payable in installments over a three to five-year period. Serv Quik's annual report for 1970 indicates losses for fiscal years 1969 and 1970 due also to a number of unprofitable transactions. On October 15, 1969, the SEC ordered a non-public investigation of Serv Quik's registration statement. The investigation ended on January 25, 1971, and the SEC took no action against Serv Quik. No criminal charges have been brought against Serv Quik, its officers or directors, with respect to the sale of stock or Serv Quik's operation. A civil suit for damages brought by a Serv Quik shareholder against the principals of Serv Quik is still pending. In the summer of 1972, Moss tried to sell his Serv Quik stock through a broker and was *351 told no market existed for the stock. Petitioners had a capital loss carryover in 1971 of $98,122, consisting of a $20,112 net short-term capital loss carryover and a $78,010 net long-term capital loss carryover. Investments prior to petitioners' purchases of Serv Quik stock had resulted in these losses. We find as an ultimate finding of fact that petitioners' Serv Quik stock was not worthless in 1971. OPINION Petitioners argue that they incurred a theft loss in 1971 with respect to their purchase of Serv Quik stock and that the stock became totally worthless in 1971. They have wholly failed to carry their burden of proof. Rule 142, Tax Court Rules of Practice and Procedure.
Whether a loss is due to "theft" as that term is used in section 165(c)(3) is a determination made in reference to local criminal law. Paul C. F. Vietzke,37 T.C. 504 (1961); Michele Monteleone,34 T.C. 688 (1960). The term is broadly defined "covering any criminal appropriation of another's property to the use of the taker." Edwards v. Bromberg,232 F. 2d 107, 110 (5th Cir. 1956); sec. 1.165-8(d), Income Tax Regs. Petitioners have simply failed to show *352 under New Jersey law any criminal appropriation of their money used to purchase the Serv Quik stock. It is clear from hindsight that the petitioners' investment was unwise, but section 165(c)(3) does not extend to losses incurred from incautious investment. Lester I. Paine,63 T.C. 736 (1975), affd. per curiam, 523 F. 2d 1053 (5th Cir. 1975). With regard to a claimed loss under section 165(g), petitioners must establish that the stock became wholly worthless in 1971. Sec. 1.165-5(c), Income Tax Regs. The determination of whether a loss was actually sustained in a particular year is not a subjective test. It cannot fairly be made solely by an examination of taxpayer's beliefs and actions. Boehm v. Commissioner,326 U.S. 287 (1945). The only evidence presented to us was Moss' own testimony which was to the effect that the Serv Quik stock became worthless in 1972, not in 1971. Although we make no finding as to the stock's value in 1972, we are convinced that the stock was not wholly worthless in 1971. Certainly, the value of petitioners' Serv Quik stock had declined dramatically, and it may well be that the stock was worth a penny or *353 less per share. Nevertheless, because the stock had some recognizable value, however negligible, respondent's determination must be sustained. Sec. 1.165-4(a), Income Tax Regs.
Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩