SAM E. MOORE and DIANE R. LOWRY, formerly DIANE R. MOORE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moore v. Commissioner
Docket No. 18241-80.
United States Tax Court
T.C. Memo 1983-671; 1983 Tax Ct. Memo LEXIS 118; 47 T.C.M. (CCH) 256; T.C.M. (RIA) 83671; November 8, 1983. *118 Held, petitioners failed to prove entitlement to a theft loss based upon alleged misappropriation of contribution to limited partnership. William R. Baldwin, III,William J. Irvin and Mahlon G. Funk, Jr., for the petitioners. Scott D. Anderson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies and additions to tax for the years 1975 and 1976 as follows: Addition to Tax
Year
Deficiency
[1] Sec.6653(a) 1975
$28,725.72
$1,436.29
1976
15,882.11
794.11
*119 The sole issue is whether or not petitioners are entitled to a theft loss for the year 1975 in the amount of $48,135.77 based upon a contribution in that amount to a limited partnership described as Aquarius South Limited Partnership #2. For convenience, the Findings of Fact and Opinion are combined. At the time of trial, petitioners' counsel stated that the issues were this theft loss and business expense deductions for both 1975 and 1976. Subsequent to trial, an amended petition was filed which reflects the issues to be the 1975 theft loss, an alternative claim to a capital loss in 1975 with respect to another partnership, Aquarius North Limited Partnership, and business expense deductions in the two years. On brief, the business expense deductions were abandoned, leaving only the principal claim in 1975 of a theft loss and the alternative claim for a capital loss. Neither in the amended petition, the opening brief, nor in petitioners' answering brief is there any explanation of or argument in support of a capital loss for 1975 as a result of the worthlessless *120 of the Aquarius North Limited Partnership. Neither do we understand how it can be treated as an alternative issue, since the alleged theft involved another partnership. We conclude either that petitioners have abandoned this alternative issue or that they have offered no evidence or argument in support of it and have failed to carry their burden of proof with respect thereto. Rule 142(a). [2] With respect to the additions to tax under section 6653(a), petitioners in their original brief clearly abandon any claim as to 1976 and they make no argument with respect to the addition to tax in the amount of $1,436.29 with respect to 1975. We, therefore, similarly conclude that petitioners have abandoned this issue or in any event they have offered no evidence or argument in support of it and have failed to carry their burden of proof with respect thereto. Rule 142(a). Moreover, the absence of adequate books and records or other documentation to support petitioners' tax returns for both years amply justifies the additions to tax for negligence. Some of the facts have been stipulated. *121 At the time of the filing of the petition, petitioner Sam E. Moore and petitioner Diane R. Lowry were both residents of the Commonwealth of Virginia. During the years 1975 and 1976, petitioners were husband and wife and they filed joint Federal income tax returns for those years. They have since been divorced and petitioner Diane R. Lowry is involved in this matter only by reason of having filed joint returns with her then husband. Petitioner Sam E. Moore will be referred to hereafter as "Moore." During the years 1972, 1973 and 1974, Moore made investments in three Virginia partnerships that were organized by one William A. "Gus" Brown (Brown) to construct and operate apartment buildings, viz.: Aquarius South Limited Partnership (Phase I), Aquarius South Limited Partnership, #2 (Phase II), and Aquarius North Limited Partnership (North). [3] In the first two partnerships, Moore was a limited partner and in North he was a general partner, but in none of the three was he active in management. Brown was the managing partner in all three partnerships. The Phase I project was completed and was operated during parts of 1973 and 1974 until foreclosed by its construction lender in November *122 1974. The Phase II project was never completed and was foreclosed by its construction lender in January 1975. Construction on North's project never commenced and it was foreclosed in March 1975. In March 1975, Brown filed for bankruptcy individually and for the three partnerships as well as a number of other entities. Objection to his discharge was filed by the construction lender for Phase I, which objection was sustained. Brown died in 1977. Shortly prior to July 1, 1974, Brown advised Moore that Phase II was in financial trouble and required more money to avoid loss of the project. Moore agreed to loan Phase II approximately $50,000, which he arranged to borrow from his bank, Southern Bank *123 and Trust Company of Richmond, Virginia. At that time, Brown advised Moore that Phase I was "operating beautifully." Accordingly, on July 1, 1974, Moore, Brown and others went to Moore's bank, signed the loan papers and Moore received the net proceeds of the loan in the form of a cashier's check issued by Southern Bank and Trust Company and payable to "Aquarius South-Limited Partnership" in the amount of $48,135.77. This check was delivered by Moore to Brown at that time. It is essentially this transaction, the obtaining by Brown from Moore of this sum of money, which petitioners contend constituted a theft for Federal income tax purposes. The cashier's check was endorsed "For deposit only, Aquarius South Limited Ptrn." The parties have stipulated that this check was "processed" through the Operations Division of Virginia National Bank, then located in Farmville, Virginia. They have also stipulated that the records of that bank reflect no accounts in the names of "Aquarius South Limited Partnership" or "Aquarius South Limited Partnership, Phase II." The endorsement is handwritten but there is no evidence as to the identity of the person who placed the endorsement on the check. *124 The only other pertinent facts in the record are that (i) the individual who performed basic bookkeeping and office management functions for Brown has no recollection of a contribution in the amount of this check being recorded on any of the books of Phase II; (ii) there was no deposit in the checking account of Phase II in the Central National Bank of Richmond, Virginia, which corresponds to this amount; (iii) Moore's other contributions to Phase II were deposited in its account in Central National Bank, and his contributions to Phase I were deposited in an account in People's Bank of Virginia Beach, Virginia; and (iv) Phase II had at least one other bank account under another name. The record further shows that in 1974, and at least by implication in earlier years, Brown was frequently in financial trouble, had suffered gambling losses and withdrew substantial sums of money from his various projects for personal living expenses. In addition, Brown followed the practice of moving funds between partnerships as necessary to pay pressing debts. On his return for 1975, Moore claimed a theft loss in the amount of $32,900, apparently from this same cashier's check transaction. Moore *125 claimed to be unable to explain why the full $48,135.77 was not claimed. Moore recognizes that the burden of proof is upon petitioners to demonstrate their entitlement to the claimed theft loss deduction in the amount of $48,135.77. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Petitioners argue that their burden is discharged by showing that the theft is a reasonable inference to be drawn from the facts; they are not required, petitioners assert, to show that the subject of the theft actually reached the hands of the thief or the mechanism by which it was accomplished. For these propositions, petitioners rely principally upon Jones v. Commissioner,24 T.C. 525 (1955); McComb v. Commissioner,T.C. Memo. 1977-176; and Jungert v. Commissioner,T.C. Memo. 1968-116. The issue which we must decide is whether or not theft or misappropriation by Brown is a reasonable inference from the evidence before us. This Court is committed to the proposition that the determination of whether a theft loss has been sustained depends upon the law of the jurisdiction where the loss occurred, in this case the Commonwealth *126 of Virginia. Monteleone v. Commissioner,34 T.C. 688, 692 (1960). Under Virginia law the taking of money by fraud or deceit, by false pretenses or false representations, constitutes theft. Va. Code secs. 18.2-98, 18.2-111 and 18.2-178 (1982); Slater v. Commonwealth,179 Va. 264, 18 S.E.2d 909 (1942). The parties seem to agree that if the evidence shows that Brown misappropriated the proceeds of the cashier's check for his own purposes, having received the check with the requisite intent to do so, a theft would have occurred under Virginia law. Respondent contends that petitioners have not met their burden of proof. We agree. With respect to the burden of proof in a theft case, we said in Allen v. Commissioner,16 T.C. 163, 166 (1951): Petitioner has the burden of proof. This includes presentation of proof which, absent positive proof, reasonably leads us to conclude that the article was stolen. If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail. If *127 the evidence is in equipoise preponderating neither to the one nor the other conclusion, petitioner has not carried her burden. We should emphasize at this point that the factual issue is not whether at some point during 1974 or 1975 Brown utilized partnership cash or assets, whether or not traceable to this cashier's check, for his own personal purposes. Petitioner's theft loss is not based on embezzlement of partnership funds. For petitioners to prevail, they must show that the reasonable inference to be drawn from the evidence is that the proceeds of the cashier's check never became partnership property but were diverted to or misappropriated by Brown following delivery of the cashier's check to him by Moore. It is, therefore, critical to trace the cashier's check and its proceeds, at least on the basis of reasonable inferences, either into Brown's possession or into the possession of the payee, "Aquarius South-Limited Partnership." This cashier's check was clearly an "order instrument" as distinguished from a "bearer instrument" and it could be negotiated only upon an endorsement by the payee. [4] The collecting bank was under a duty to apply the proceeds of the check consistently *128 with the terms of the restrictive endorsement. [5] The "For deposit only" endorsement on the check is a restrictive endorsement under the Uniform Commercial Code, as adopted by the Commonwealth of Virginia, which means that the collecting bank, in this case Virginia National Bank, was required to credit the proceeds to Aquarius South-Limited Partnership in some fashion. [6] We judicially know that under normal banking practices, Virginia National Bank would have been required to collect the cashier's check for the account of Aquarius South-Limited Partnership and credit the funds on collection to that payee. Mechanically, the normal practice, consistent with the endorsement, would have been a deposit in the name of the partnership in that bank. While the parties have stipulated that the bank has no record of an account in the name of either Phase I or Phase II, [7] we cannot assume that the bank violated its obligations under the Virginia Code without some basis therefor. Thus, it is not a reasonable inference to assume that under this restricted endorsement Virginia National Bank simply transferred the proceeds of the cashier's check directly to Brown in cash or in the form of another *129 cashier's check or bank check. The only reasonable assumption which we can make from these facts is that the cashier's check was deposited in some branch of Virginia National Bank in an account in the name of Aquarius South-Limited Partnership, or a name substantially identical thereto, subject to being withdrawn upon any authorized signature of that partnership. [8] This obviously would have included Brown as the sole general partner. [9] The reasonable inference from the evidence before us is that the proceeds of this cashier's check became the property of Phase I or Phase II. While it is Moore's contention that the contribution was intended for Phase II only, he must be held responsible for his failure to require that the name of the payee of the cashier's check be restricted to Phase II. *130 There is nothing in Jones v. Commissioner,supra, which requires a different result. In that case, a piece of jewelry was stolen from a locked compartment in a bathroom closet, the key to which was available to a maid who abruptly departed on the owner's return from a trip. Applying the rationale of Allen v. Commissioner,supra, we found the reasonable inference from the facts to be that the pin had been removed from its place of safekeeping by some unauthorized person who gained access with the petitioner's key. In McComb v. Commissioner,supra, we were convinced that the petitioner, who had been induced to contribute money to a failing business, had been swindled. By contrast here, it is uncertain whether some or all of these funds may have been used to pay debts or to temporize with creditors of one or the other of the two Aquarius South Partnerships or perhaps some other partnership. In Jungert v. Commissioner,supra, we were satisfied with the credibility of the evidence and therefore found that the only reasonable inference was theft. We simply cannot find on this record that theft *131 by Brown of the cashier's check or its proceeds is the only reasonable inference. Petitioner strongly argued that Brown was an unsavory character, violating his fiduciary duty as a general partner with impunity, all largely on the basis of the Bankruptcy Court record and the findings of the Bankruptcy judge in denying Brown a discharge. We accept the facts that Brown transferred funds from one account to another as needed, that he withdrew funds for his personal purposes contrary to the partnership agreements, that the gambled and perhaps was dishonest. We have given due consideration to those portions of this record. Notwithstanding, we cannot conclude that the reasonable inference is that the proceeds of the cashier's check went directly into Brown's pocket. Whether or not he misappropriated the funds from a partnership account or more logically used them to stave off whatever creditor was pressing the loudest at the time, we cannot say. That issue is not before us. Petitioners must convince us that it is reasonable to infer that the proceeds of the cashier's check went directly into Brown's pocket. This they have failed to do. [10]
*132 On the basis of the foregoing, we find for respondent. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The parties have been imprecise as to the names of Phase I and Phase II, probably because the documents are similarly imprecise. The two projects are apparently related since the street addresses of the two apartment projects appear to be the same. We have treated these two partnerships as separate entities since both petitioners and respondent have done so, although there is enough in this record to suggest that in fact Phase I and Phase II may be really a single partnership.↩
4. Va. Code, sec. 8.3-205, 8.3-206↩ (1950) (1965 vol. added). 5. Va. Code, sec. 8.3-206↩ (1950) (1965 vol. added). 6. See in general the discussion of this subject in Uniform Commercial Code,↩ White and Summers, sec. 15-2 (2d ed. 1980). 7. It is apparent that the payee's name could apply either to Phase I or to Phase II.↩
8. It is unfortunate that no employee of Virginia National Bank was called upon to explain for the record how this cashier's check could have been "processed" by that bank without in fact the proceeds being credited to an account in the name of the payee, as well as the meaning of the word "processed" as used in the stipulation. ↩
9. Each of the two partnership agreements that have been stipulated authorize the general partner to handle business matters, including the deposit and withdrawal of funds.↩
10. It is, of course, conceivable that Brown established an account in the name of the partnership, deposited the funds in that account and immediately withdrew the funds for his own benefit, having conceived this scheme from the start. That would certainly not be an unreasonable inference but no more reasonable than that the funds were used for some partnership purpose of one or the other of Phase I or Phase II. Thus, at best the evidence would be "in equipoise" and petitioners would not have carried their burden.↩