AFTAB A. MALIK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Malik v. Commissioner
Docket No. 16802-93
United States Tax Court
T.C. Memo 1995-204; 1995 Tax Ct. Memo LEXIS 205; 69 T.C.M. (CCH) 2566; May 10, 1995, Filed *205 Decision will be entered under Rule 155. Aftab A. Malik, pro se. For respondent: Debra K. Estrem. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 10,743 and additions to tax under sections 6651(a) and 6654 of $ 2,283.50 and $ 589.11, respectively, in petitioner's Federal income tax for 1990. The issues for decision are whether petitioner is entitled to a theft loss deduction in 1990, stemming from amounts allegedly loaned by petitioner, and whether petitioner is liable for the additions to tax determined by respondent. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. In addition, because petitioner failed to respond to respondent's request for admissions, some facts are deemed admitted. Petitioner resided in Berkeley, California, at the time the petition was filed. He did not file a tax return for the year in issue or pay any estimated tax. *206 Petitioner received a bachelor's degree in economics, with a concentration in business, from State University of New York at Albany in January 1990. In September 1990, petitioner began to attend University of California, Hastings Law School. He graduated from Hastings Law School in May 1993. During 1990, petitioner was engaged in a consulting business in which he worked with several law firms in Los Angeles, California. Petitioner analyzed the legal bills of these law firms to determine what amounts could be allocated to different cases, in connection with bad-faith insurance litigation. During 1990, petitioner earned nonemployee compensation of $ 27,587, wages of $ 9,881, and interest income of $ 133. Petitioner's family members are close friends with members of the Mahmoud family. The two families have known each other since at least 1976 when they left the civil war in Lebanon and traveled to North America. Petitioner knows a few of the eight brothers in the Mahmoud family very well. In April 1990, petitioner received a telephone call from two of the Mahmoud brothers that he knew well. They informed petitioner that they were going to Florida to start up a dance club. *207 The brothers asked petitioner to aid them in incorporating the Helium Dance Club (the club). In mid-1990, petitioner transferred the following amounts by wire from his personal bank account to a bank in Jacksonville, Florida, for the account of the club: $ 4,975 in June 1990; $ 1,500 in June 1990; and $ 10,000 in July 1990. Petitioner expected the funds to be used by the brothers to establish the business. No loan documents or written agreements were prepared or executed concerning the treatment of petitioner's wired funds. Petitioner knew very little about the club. In August 1990, when petitioner attempted to contact the club, he discovered that the business telephone number for the club had been disconnected. Petitioner managed to contact one of the two Mahmoud brothers who were the principals of the club. This brother (Mahmoud) informed petitioner that Bassam Mahmoud (Bassam), the other principal of the club, had removed the funds petitioner had transferred to the business and had converted the funds to his own personal use. Petitioner did not file a police report about the alleged embezzlement and did not file a lawsuit against Bassam or Mahmoud or the club. Instead, *208 petitioner attempted to resolve the matter through informal means by contacting Mahmoud and some of the other Mahmoud brothers who were then living in Canada. Petitioner inquired about Bassam's whereabouts and financial situation. Petitioner also requested that the brothers try to persuade Bassam to return the funds. From August 1990 through December 1990, petitioner had telephone conversations with various Mahmoud brothers every few days. In December 1990, petitioner visited Canada and personally met with Bassam. Petitioner learned that Bassam had no home, no car, and no business interests with his other brothers, and had applied for a low-income housing grant. Petitioner concluded at that time that he would not be able to recover his funds from Bassam. Petitioner, however, continued to inquire periodically about Bassam's financial status and to request that the other brothers exert moral persuasion to encourage Bassam to repay the funds. Respondent mailed to petitioner a statutory notice of deficiency for 1990 on May 6, 1993. On August 3, 1993, petitioner filed the petition in this case. Petitioner failed to comply with the Court's Rules and/or orders, including a Standing *209 Pre-Trial Order, and was generally uncooperative in working with respondent in an attempt to settle this case and/or to prepare it for trial. Petitioner failed to stipulate to any facts prior to trial and did not submit a trial memorandum. One week before trial in September 1994, petitioner provided respondent with a proposed tax return for 1990. The proposed tax return contained a Schedule C for a business shown as "consulting services", reporting income of $ 27,587.50 and expenses of $ 25,136.16. Among the reported expenses, petitioner claimed a "casualty expense" of $ 16,475, representing the total amount of money petitioner had wired to the club. OPINION Theft Loss
Section 165(a) permits taxpayers to deduct any loss sustained during the taxable year that is not compensated for by insurance or otherwise. Section 165(b) governs the amount of the deduction, while losses incurred by individual taxpayers are subject to additional rules contained in section 165(c). A taxpayer is entitled to deduct a theft loss in the taxable year in which the taxpayer discovers such loss. Sec. 165(e). A theft loss is not deductible, however, as long as the taxpayer has a claim for reimbursement *210 with a reasonable prospect of recovery. Sec. 1.165-8(a), Income Tax Regs. Petitioner has the burden of proving a theft loss. Rule 142(a); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133. Petitioner maintains that he is entitled to deduct a theft loss in the amount of $ 16,475. He does not contend, and certainly has not proven, that he was defrauded in relation to the moneys advanced to the club. He contends that he suffered a theft loss when the money he "loaned" to the club was embezzled by one of the principals of the club. At trial, petitioner presented evidence of three wire transfers from his personal bank account in Los Angeles to the club. He did not call any other witnesses to corroborate his testimony or to provide other than hearsay evidence of the alleged theft. The belatedness of his claim casts doubt on the validity of it. For purposes of this opinion, however, we have found facts testified to by petitioner. The term "theft" includes, but is not limited to, larceny, embezzlement, and robbery. Sec. 1.165-8(d), Income Tax Regs. Whether there was a theft depends on the *211 law of the State in which the alleged theft occurred. Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975); Monteleone v. Commissioner, 34 T.C. 688, 694 (1960); Allen v. Commissioner, 16 T.C. 163, 166 (1951). Based on the events described by him, petitioner must establish that a theft occurred under Florida law. A person commits a "theft" under Florida law if he: knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit therefrom. (b) Appropriate the property to his own use or to the use of any person not entitled thereto. [Fla. Stat. Ann. sec. 812.014 (West 1994).]
Embezzlement of funds from the club, if it occurred, would constitute a theft under Florida law. Petitioner, however, is not entitled to a theft loss under section 165(c) because petitioner was not the victim of any embezzlement. A theft loss deduction may be claimed only by the taxpayer *212 who was the owner of the stolen property when it was criminally appropriated. Lupton v. Commissioner, 19 B.T.A. 166 (1930); Silverman v. Commissioner, T.C. Memo. 1975-255, affd. without published opinion 538 F.2d 320 (3d Cir. 1976). To determine the ownership of property, we resort to local law. Silverman v. Commissioner, supra; Draper v. Commissioner, 15 T.C. 135 (1950). Under Florida law, "ownership" in the context of a theft is a term of art meaning any possession that is rightful as against the thief. R.C. v. State, 481 So. 2d 14, 15 (Fla. Dist. Ct. App. 1985). It is satisfied by proof of temporary possession or control of the property or by proof of a custodial interest in the property. Taylor v. State, 557 So. 2d 138 (Fla. Dist. Ct. App. 1990); R.C. v. State, supra.
At trial, petitioner characterized the transfers of money as a business loan to the club. He has not explained how this loan was related to his "consulting *213 services" business, and any personal casualty loss would be reduced by $ 100 plus 10 percent of petitioner's adjusted gross income under section 165(h). Accepting, however, petitioner's factual premises for the sake of argument, at the time of the alleged embezzlement, the club would be the owner of the $ 16,475. The club had possession and control of the funds. Petitioner lacked possession and control of the transferred money. Furthermore, petitioner did not present any evidence demonstrating that he had a custodial interest in the funds. Consequently, assuming Bassam appropriated the funds to his own personal use, he embezzled the money from the club, not from petitioner. Petitioner is not entitled to deduct any part of the embezzled funds as a theft loss pursuant to section 165(c). Petitioner claimed prior to trial that he was entitled to a nonbusiness bad-debt deduction for the amounts he allegedly loaned to the club. Petitioner presented no testimony at trial as to if, when, or how this "loan" was to be repaid. Petitioner subsequently abandoned this argument by not mentioning it in his opening brief and by failing to file a reply brief ordered by the Court. He has not, *214 in any event, proven that his advances constituted a bona fide debt or that such a debt became worthless in 1990. See sec. 166(d); sec. 1.166-1(c), Income Tax Regs.
Section 6651(a) Addition to Tax
Respondent determined that petitioner is liable for an addition to tax under section 6651. Section 6651(a)(1) imposes an addition to tax for failure to file a timely tax return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner did not file a Federal income tax return for 1990. He offered neither evidence at trial nor argument on brief demonstrating that his failure was due to reasonable cause and not due to willful neglect. Under the circumstances, he appears to have no excuse. We sustain respondent's determination that petitioner is liable for the section 6651 addition to tax. Section 6654 Addition to Tax
Respondent also determined that, pursuant to section 6654, petitioner is liable for an addition to tax for failure to pay any estimated tax for 1990. Section 6654 imposes an addition to tax on individuals for an underpayment of estimated tax. This addition to tax is mandatory absent circumstances not shown *215 to exist in this case. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner is liable for the addition to tax under section 6654. To reflect respondent's concession of certain deductions not in dispute, Decision will be entered under Rule 155. [1]
Footnotes
1. The reduced deficiency resulting from respondent's concession has been calculated in an exhibit received in evidence. Decision will be entered accordingly.↩