T.C. Summary Opinion 2010-83

UNITED STATES TAX COURT

BRETT M. ELLMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5341-09S.                    Filed June 23, 2010.

Brett M. Ellman, pro se.

<u>Jeffrey A. Schlei</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's 2005 Federal income tax of $24,984 and an accuracy-related penalty of $4,996.80 under section 6662(a).

After concessions,[2] the issues for decision are: (1) Whether petitioner may claim a loss of $65,000 in 2005 arising from his purported investment in Fuschia Ltd. Partnership, and (2) whether petitioner is entitled to Schedule C, Profit or Loss From Business, deductions for various expenses related to other claimed business activities.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioner resided in California when the petition was filed.

During 2004 and for part of 2005 petitioner worked as a mechanical engineer in the field of pharmaceutical discovery for Illumina, Inc. Petitioner left his position as an engineer in 2005 to pursue a career as a full-time property developer.

---

[2] Petitioner concedes that he received a taxable State tax refund in 2005 as determined in the notice of deficiency. Respondent concedes the accuracy-related penalty under sec. 6662(a).

In 2004 petitioner entered into a partnership agreement (agreement) with Fuschia Limited Partnership (Fuschia).[3] The agreement, in its entirety, reads as follows:

July 14, 2004

This is an agreement between Brett M. Ellman * * * and Fuschia Limited Partnership -- Dennis Calkins, General Partner.

Fuschia Limited Partnership agrees to give Brett M. Ellman 20% partnership in numerous projects listed in the attached Addendums. Each Addendum must be signed and dated by both partners.

Partnerships are not transferable without the written consent of the other partner.

If for any reason either partner wishes to sell his percentage of ownership on a project the other partner has first option to purchase.

Brett M. Ellman will pay a total investment in the amount of ($550,000.00) Five-hundred and fifty thousand and 00/100 dollars, ($50,000.00) Fifty thousand and 00/100 dollars will be paid at the signing of this agreement and the balance to be paid within 60 days of the above date.

Any dispute or claim arising between either partner out of this contract or any resulting transaction, which is not settled by mediation, shall be decided by neutral, binding arbitration. By agreeing to arbitration, the parties to this contract expressly give up the right to litigate any dispute in a court or jury trial.

The agreement was signed and dated by petitioner and Dennis Calkins (Mr. Calkins). Petitioner provided a copy of an addendum

---

[3] Use of the terms "partnership" and "agreement" (and their derivatives) are intended for narrative convenience only. Thus, no inference should be drawn from our use of such terms regarding any legal status or relationship.

which is a handwritten document on blank paper that reads as follows:

> Addendum #1          August 10th 2004
>
> Agreed this date per our Partnership Agreement dated July 14th 2004 the following properties are agreed as being added to the Partnership at 20% to Brett M. Ellman
>
> #1)  Phase #4          Lot 36    Plan 2
>      Desert Willows     Desert Hot Springs CA
>      Single Family Home  per attached paperwork
>
> #2)  Unit #1101          La Jolla De Rosarito condo
>                              Mexico
>      2 Bed 2 Bath        per attached paperwork
>
> #3)  Unit #201           La Jolla De Rosarito condo
>                              Mexico
>      2 Bed 2 Bath        per attached paperwork

The addendum was signed and dated by petitioner and Mr. Calkins, but no additional paperwork was attached to the addendum. The two properties listed on the addendum located in La Jolla de Rosarito, Mexico, were not owned by Fuschia, but were owned by another limited partnership called Ramsgate. The other property listed on the addendum located in Desert Hot Springs, California, was purchased in August 2004 by Panelog Building Systems, Inc., and Kristina Kukuli, the wife of Mr. Calkins.

A nonnegotiable purchaser copy of a cashier's check dated July 16, 2004, made out to Fuschia Limited Partnership for $58,000 was admitted into evidence at trial. Petitioner also wrote a personal check to Dennis Calkins on December 13, 2004,

for $20,000, which check was negotiated on December 16, 2004. The memo line of the personal check reads "Down Payment".

At trial, petitioner explained that his understanding of the agreement was that Fuschia was a joint venture with a purpose of developing properties in Mexico and that the properties listed in the addendum were already constructed and served as collateral for future projects. After some time, petitioner said he began asking Mr. Calkins about the progress of the projects, but Mr. Calkins' responses were allegedly vague and "standoffish". Petitioner claimed that he also requested written confirmation of the projects but never received any. Petitioner said he finally began making verbal requests for a return of his money, but Mr. Calkins did not return petitioner's calls. Although petitioner made verbal requests for the return of his money, petitioner stated he never sought the services of a mediator or arbitrator to resolve his dispute with Mr. Calkins. Petitioner stated that in 2005 he did not think that the $78,000 he paid to Fuschia and Mr. Calkins would be returned.

Petitioner further stated that Mr. Calkins still resides in San Diego County, California, the same county in which petitioner resides. Petitioner continues to maintain social contacts with Mr. Calkins and stated that he had, in fact, seen Mr. Calkins within the last few weeks. When asked about the nature of his

recent conversation with Mr. Calkins, petitioner stated it "does not relate to this case."

Although he is not fluent in Spanish, petitioner allegedly started his own independent business in 2004 developing properties in Mexico. As part of this business petitioner purchased property for development in Puerto Nuevo, Mexico. In the fall of 2004 petitioner created a Mexican corporation, "MX Vistas S. de R.L. de C.V.". In 2005 petitioner created a U.S. S corporation, "MX Vista, Corp." The two corporations did not have income in 2004 or 2005 but had some income in 2006 and 2007.

In 2005 petitioner incurred various expenses related to the non-Fuschia property development in Mexico for bank charges, contractors, Internet, outside services, and telephone. The largest expenditure was for contractors and included costs for: (1) Environmental impact reports to determine whether a plot of land was buildable; (2) architectural plans including blueprints and engineering calculations; and (3) excavation of land to make it appealing to investors. Petitioner did not provide an explanation for the bank charges, or Internet, outside services, and telephone expenses.

Petitioner filed a 2005 Federal income tax return. On a Schedule C, petitioner claimed deductions for "Other Expenses" as follows:

| | |
|---|---|
| Debts from Sales or Service | $65,000 |
| Bank Charges | 372 |
| Contractors | 18,094 |
| Internet | 132 |
| Outside Services | 200 |
| Telephone | 1,790 |

The deduction for "Debts from Sales or Service" of $65,000 relates to petitioner's payments to Fuschia and Mr. Calkins of $78,000.[4]  The deductions for bank charges, contractors, Internet, outside services, and telephone are expenses from petitioner's non-Fuschia property development activities in Mexico.

During the audit process of petitioner's 2005 Federal income tax return, petitioner submitted a written statement to the examiner that reads:

> An agreement to conduct business as a joint venture with Fushia [sic] Limited Partnership was initiated on July 14, 2004.  Business with Fushia [sic] did not go as planned and in 2005 it was realized that funds of $78,000 given to Fushia [sic] in 2004 should be considered a loss. Current legal actions may allow me to realize gains for my future tax returns.  On my 2005 tax return my accountant incorrectly listed these losses as "Bad Debts: $65,000" and "Contractors: $18,094."  This was listed incorrectly.  They should have been listed as "Bad Debts: $78,000" and "Contractors: $5,094."  $5094 was paid in cash. [Emphasis added.]

The statement was signed by petitioner and dated August 15, 2007.

At trial, petitioner disavowed the statement, explaining that

---

[4]  Petitioner seeks to explain the discrepancy between $78,000 and $65,000 in the written statement discussed in the following paragraph of the text.

this was "not an accurate statement" and stated that "there were no current legal actions". Petitioner further stated:

> I had thought * * * in 2007 * * * maybe I could go after this now, after speaking with [the examiner] and maybe I really should go after this. And so I had thought to myself I might seek * * * legal actions. But I never did.

In a notice of deficiency, respondent determined, inter alia, that petitioner was not entitled to the claimed Schedule C deductions for "Other Expenses", including the money paid to Fuschia and Mr. Calkins, and the non-Fuschia business expenditures.

## Discussion

### A. Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish that he or she is entitled to any deduction or credit claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain sufficient records to enable the Commissioner to determine their correct tax liability. Sec. 6001.

Under section 7491(a)(1), the burden of proof may shift from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability. Petitioner has not alleged that section 7491 applies, nor did he introduce the requisite evidence to invoke that section; therefore, the burden of proof remains on him.

B. <u>Schedule C Fuschia Loss</u>

As a general rule, section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. However, in the case of an individual, section 165(c) limits the deduction to: (1) Losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit; and (3) losses of property not connected with a trade or business or with a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

A loss is treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. Sec. 1.165-1(d)(1), Income Tax Regs.; see also sec. 1.165-1(b), Income Tax Regs. However, if there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of a loss with

respect to which reimbursement may be received is "sustained" until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Sec 1.165-1(d)(2)(i), Income Tax Regs.

Under section 165(e), a loss arising from theft is sustained during the taxable year in which the taxpayer discovers the loss. See secs. 1.165-1(d)(3), 1.165-8(a)(2), Income Tax Regs. The term "theft" includes, but is not limited to, larceny, embezzlement, and robbery. See sec. 1.165-8(d), Income Tax Regs. "Whether a theft loss has been sustained depends upon the law of the jurisdiction wherein the particular loss occurred." Monteleone v. Commissioner, 34 T.C. 688, 692 (1960).

Section 484 of the California Penal Code (West Supp. 2010) states the general definition of "theft" as follows:

> (a) Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. * * *

Petitioner urges the Court to find that the money he paid to Fuschia and Mr. Calkins was lost to theft in 2005. However, the record does not permit any such finding. But even assuming that

the money was lost to theft, petitioner has not demonstrated that such loss was actually "sustained" in 2005. See sec. 1.165-1(d)(2)(i), Income Tax Regs. Petitioner admitted at trial that in 2007 he considered whether he should pursue reimbursement of the moneys paid to Fuschia and Mr. Calkins and included in his letter to the IRS examiner that "Current legal actions may allow me to realize gains for my future tax returns." In addition, although petitioner maintains social contacts with Mr. Calkins and Mr. Calkins resides in San Diego County, petitioner did not call (or subpoena) Mr. Calkins to testify on his behalf. In the absence of such testimony, we infer that it would have been unfavorable to petitioner. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Thus, we hold that in 2005 petitioner had not ascertained with reasonable certainty whether or not reimbursement would be received and, therefore, that he may not claim as a deduction in that year amounts paid to Fuschia and Mr. Calkins. See sec. 1.165-1(d)(2)(i), Income Tax Regs.[5]

---

[5] Petitioner has at times intimated that the amount deducted is allowable as a bad debt. See generally sec. 166. However, even if petitioner's investment in Fuschia represented a bona fide loan, petitioner failed to prove (inter alia) that the "debt" became worthless in 2005. See secs. 1.166-2 and 1.166-3, Income Tax Regs.

C.  Non-Fuschia Schedule C Business Expenditures

Section 162 generally allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  Such expenses must be directly connected with or pertain to the taxpayer's trade or business.  Sec. 1.162-1(a), Income Tax Regs.  Whether an expenditure satisfies the requirements of section 162 is a question of fact.  Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

However, under section 263(a), no deduction is allowable for any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.  Such capital expenditures include:  (1) The cost of acquisition, construction, or erection of buildings, machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the tax year, and (2) any amount expended for architect's services.  Sec. 1.263(a)-2(a), (d), Income Tax Regs.

In addition, section 195(a) provides:  "Except as otherwise provided in this section, no deduction shall be allowed for start-up expenditures."  Section 195(c)(1) defines "start-up expenditure" as:

(1) * * * any amount--

(A) paid or incurred in connection with--

(i) investigating the creation or acquisition of an active trade or business, or

(ii) creating an active trade or business, or

(iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and

(B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

The disallowance of deductions under sections 263(a) and 195(a) does not apply to research and experimental expenditures deductible under section 174(a). Secs. 195(c), 263(a)(1)(B). However, section 174(c) provides that no deduction is allowable under section 174(a) for any expenditure for the acquisition or improvement of land. See TSR, Inc. & Sub. v. Commissioner, 96 T.C. 903 (1991) (explaining that the phrase "research and experimental" for purposes of section 174 refers to scientific or technological research); see also sec. 1.174-2(a), Income Tax Regs. Because petitioner's non-Fuschia Schedule C expenditures were for the "acquisition or improvement of land", those expenditures are not deductible under section 174(a). See sec. 174(c).

Although a taxpayer may not deduct the full amount of capital expenditures or startup expenses in the year in which the expense is incurred, a taxpayer may be able to amortize or

depreciate these expenditures if the taxpayer is engaged in an active trade or business for profit.  Secs. 162(a), 167(a), 183, 195(b)(1).  Carrying on a trade or business requires a showing of more than an initial investigation of business potential.  Dean v. Commissioner, 56 T.C. 895, 902 (1971); Glotov v. Commissioner, T.C. Memo. 2007-147.  Rather, the taxpayer's business operations must actually have commenced.  A taxpayer has not "'engaged in carrying on any trade or business' within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized."  Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds 382 U.S. 68 (1965); see also Kinney v. Commissioner, T.C. Memo. 2008-287 (taxpayer constructed building and located key client but expenditures not deductible because welding business had not started operating).

Petitioner contends that he incurred costs for contractors, bank charges, Internet, outside services, and telephone as a result of his non-Fuschia property development activities. Petitioner testified that the contractor fees included environmental impact reports, architectural plans, and excavation of land to attract investors.  Petitioner did not provide any explanation or other evidence regarding the bank charges, or Internet, outside services, and telephone expenses.

During 2005 petitioner had not started developing any property; therefore, on the record before us we are unable to find that petitioner's non-Fuschia property development activities were more than mere preparations for entering into business. Accordingly, we hold that in 2005 petitioner's non-Fuschia property development expenditures were not incurred by an active trade or business and therefore are nondeductible.

### Conclusion

We have considered all of the arguments made by petitioner, and, to the extent that we have not specifically addressed them, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency and for petitioner as to the penalty</u>.