T.C. Memo. 2018-141

UNITED STATES TAX COURT

LYNDHA ELAYNE EVENSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10680-08.                                    Filed August 29, 2018.

Lyndha Elayne Evensen, pro se.

<u>Kimberly A. Daigle</u> and <u>John T. Arthur</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Before trial the parties settled all issues set forth in the
notice of deficiency and filed a stipulation of settled issues.[1]  However, no
decision document was filed in order to provide petitioner with an opportunity to

_____

[1]All section references are to the Internal Revenue Code in effect for the
years at issue; all Rule references are to the Tax Court Rules of Practice and
Procedure.  All dollar amounts are rounded to the nearest dollar.

[*2] file an amended tax return for 2008 to claim theft loss deductions, resulting in carryback losses to 2004 and 2005 that could offset the tax deficiencies resulting from the stipulation. Petitioner filed the 2008 amended tax return on April 13, 2012, claiming theft loss deductions of $276,301 with respect to three losses: two losses on investment accounts of $74,301 and $102,000 for deposits on May 1, 2006, and January 10, 2007, respectively, and $100,000 in unpaid compensation for her services on June 1, 2008. The Internal Revenue Service disallowed the 2008 theft loss deductions. The issue for our consideration is whether petitioner is entitled to deduct theft losses for 2008 and to carry back losses to 2004 and 2005.[2]

## FINDINGS OF FACT

Petitioner resided in Florida when she filed her petition. She has been a tax return preparer since 2001. That year she organized Atlantic Avenue D.B. Financial/Legal Support Group, Inc. (Atlantic Avenue). She was its president and sole shareholder. For 2004 and 2005 petitioner reported her income and expenses from her tax preparation services on Schedules C, Profit or Loss From Business, under the name Atlantic Avenue. She received client referrals from Merendon

_____

[2]Although petitioner claimed the theft loss deductions for 2008, only 2004 and 2005 are before us. The Court has jurisdiction to consider facts relating to tax years not at issue as may be necessary to correctly redetermine the amounts of the tax deficiencies for the years before the Court. See sec. 6214(b).

[*3] Mining, Inc. (Merendon Mining). Her relationship with Merendon Mining began around 2003. The referrals represented the primary source of Atlantic Avenue's business. Merendon Mining promoted investments in a gold mining business, promising a 36% annual return on investments.

Sometime around 2007 petitioner's colleague at Atlantic Avenue, Paul Garfinkle, became suspicious of Merendon Mining's activities as a result of discussions with Atlantic Avenue's clients. He suspected that Merendon Mining operated a fraudulent investment arrangement known as a Ponzi scheme. In 2007 he traveled to Honduras to tour Merendon Mining's gold refinery and processing operations. His trip confirmed his suspicions. In July 2007 Atlantic Avenue received a subpoena for its clients' documents relating to Merendon Mining and incurred significant costs responding to the subpoena. In 2008 petitioner and Mr. Garfinkle learned that the Canadian Government had instituted criminal action against individuals who devised and promoted Merendon Mining's Ponzi scheme. The operators of the Ponzi scheme were charged and arrested in the United States in late 2009. The U.S. Securities and Exchange Commission (SEC) also instituted an action against Merendon Mining and the promoters of the Ponzi scheme.

Petitioner cooperated with the SEC and criminal investigations. She also assisted her clients in initiating an involuntary bankruptcy proceeding against

[*4] Merendon Mining to recover funds her clients lost in the Ponzi scheme. In February 2009 several of Atlantic Avenue's clients filed an involuntary bankruptcy petition against Merendon Mining to recover their investments. In re Merendon Mining (Nevada), Inc., No. 09-11958-BKC-AJC (Bankr. S.D. Fla. Feb. 4, 2009).

Atlantic Avenue also filed a bankruptcy claim for compensation for services of $100,000 and two additional claims of $212,279 each. In November 2013 the bankruptcy trustee filed objections to Atlantic Avenue's claims on the basis that (1) recovery was limited to actual funds lost because the Ponzi scheme was an unenforceable contract and/or (2) Atlantic Avenue did not provide documentation to support the claims. The trustee also identified the two $212,279 claims as duplicates. Atlantic Avenue filed a response for itself and several of its clients. In December 2014 the bankruptcy court issued an order striking Atlantic Avenue's claims on the basis that Atlantic Avenue did not appear at a hearing. The bankruptcy estate collected a small fraction of the amount of the claims filed against Merendon Mining, and most of the claims were not paid.

In April 2012 petitioner filed an amended tax return for 2008 claiming the three theft loss deductions. Atlantic Avenue filed an S corporation tax return for 2008.

**[*5]**                                    OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving their entitlement to any claimed deductions. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. The burden of proof may shift to Commissioner as to factual issues where the taxpayer complies with certain substantiation and recordkeeping requirements, which have not been met in this case. See sec. 7491(a).

Taxpayers are entitled to deduct losses resulting from theft. Sec. 165(a), (c), (e). The taxpayer must establish three elements to substantiate a theft loss deduction: the occurrence of a theft, the quantifiable loss, and the date that the taxpayer discovered the theft. Gerstell v. Commissioner, 46 T.C. 161, 175 (1966); Monteleone v. Commissioner, 34 T.C. 688, 692 (1960); McKinley v. Commissioner, 34 T.C. 59, 63 (1960); see also Yates v. Commissioner, T.C.

[*6] Memo. 1988-565.  For Federal tax purposes, theft is given a general and broad connotation and includes any criminal appropriation of another's property, including theft by swindle, false pretenses and other forms of guile.  Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956).  Respondent does not contest that a loss in a Ponzi scheme is a theft for purposes of section 165(c).  See Rev. Rul. 2009-9, 2009-14 I.R.B. 735.

A theft loss is sustained in the year that the taxpayer discovers the theft.  Sec. 165(e).  However, if the taxpayer has a claim for reimbursement with a reasonable prospect of recovery, the loss will be treated as sustained in the year that it can be ascertained with reasonable certainty that he will not receive reimbursement.  Sec. 1.165-1(d)(3), Income Tax Regs.; see Viehweg v. Commissioner, 90 T.C. 1248, 1255-1256 (1988).  A taxpayer has a reasonable prospect of recovery when he has a bona fide claim for recovery and there is a substantial possibility that the claim will be decided favorably for the taxpayer.  Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), aff'd, 521 F.2d 786 (4th Cir. 1975).

Petitioner alleges that she sustained theft losses in connection with her dealings with Merendon Mining.  For a theft loss deduction, the taxpayer must prove ownership of the stolen property.  Draper v. Commissioner, 15 T.C. 135,

[*7] 135 (1950); <u>Jensen v. Commissioner</u>, T.C. Memo. 1979-379; <u>Silverman v. Commissioner</u>, T.C. Memo. 1975-255, <u>aff'd</u>, 538 F.2d 320 (3d Cir. 1976); <u>Whiteman v. Commissioner</u>, T.C. Memo. 1973-124. Petitioner also seeks to avail herself of relief under the safe harbor provisions of Rev. Proc. 2009-20, 2009-14 I.R.B. 749, for taxpayers who experience losses from criminally fraudulent investment schemes. We find that petitioner failed to prove a theft occurred because she did not establish that she made an investment with Merendon Mining or had previously reported unpaid compensation. Moreover, she is not entitled to safe harbor relief because she did not establish that a theft loss occurred.

Petitioner argues that she sustained losses as a victim of the Ponzi scheme that she is entitled to deduct as theft losses for 2008. She failed to credibly explain how she received her alleged investment in Merendon Mining. She testified that she did not make a cash investment. She claimed that she received an ownership interest in Merendon Mining as partial compensation for her services to Merendon Mining in addition to cash payments for her services. She testified that Merendon Mining referred clients to her and paid her for preparing the returns. However, she did not provide any invoices or other documentation of the services she provided to Merendon Mining or her relationship to the company. She did not adequately explain the basis for her receiving compensation from Merendon

**[*8]** Mining rather than the individuals for whom she prepared returns.  We do not find her testimony to be credible.

Moreover, Mr. Garfinkle offered a different explanation of how petitioner received her investment in Merendon Mining.  He testified that in 2003 Merendon Mining purchased for $400,000 an interest in a gold mining property in Colorado that he jointly owned with petitioner and that $100,000 of the sale proceeds was deposited into an account of Solid Gold Depository as an investment in Merendon Mining.  However, on brief petitioner alleges that the sale proceeds were deposited in 2006 and not in 2003, the year of the alleged sale.  She further alleges, without documentation to support her claim, that the sale was not completed because Merendon Mining's funds were frozen as part of the SEC investigation of the Ponzi scheme.  She also alleges, without documentation, that the bankruptcy trustee took possession of the mining property and sold it in liquidation of the bankruptcy estate.

Petitioner did not present any documentation to substantiate that she owned an interest in the gold mining property, sold the property to Merendon Mining, or reported the sale for Federal tax purposes.  Rather, she relied on Mr. Garfinkle's testimony, which we find not credible in the absence of supporting documentation.  Moreover, petitioner's own position sets conflicting years for the sale and the

[*9] deposit of the sale proceeds without any explanation for the delay or inconsistency. Petitioner did not present adequate documentation to substantiate a $100,000 deposit of purported sale proceeds into an account in her name. She produced records for two accounts, Syndicated Gold Depository (Syndicated Gold), dated October 14, 2007, showing an opening balance on May 1, 2006, of $74,301 (Syndicated Gold account), and 3sixty Earth Resources, Ltd. (3sixty), dated November 30, 2007, showing an opening balance on January 1, 2007, of $102,000 (3sixty account). Petitioner claimed the opening balance of each account as part of her theft loss deductions in addition to a $100,000 loss for unpaid compensation. It appears that Mr. Garfinkle may have mistakenly referred to Syndicated Gold as Solid Gold in his testimony. Irrespective of this apparent mistake, we do not find that these account statements are sufficient to substantiate petitioner's alleged theft losses.

Both Syndicated Gold and 3sixty were used in the Ponzi scheme. The statements do not identify the account owner or correspond to the dates of her alleged investments or the sale of the alleged mining property. Petitioner did not present any documentation showing that she was the owner of the accounts. The 3sixty account statement shows a zero balance on February 11, 2007, with an entry labeled "asset resigned". Finally, we note that the two theft loss deductions of

[*10] $74,301 and $102,000 based on the Syndicated Gold and 3sixty account statements, respectively, do not appear to relate to Atlantic Avenue's two $212,279 bankruptcy claims. On the basis of the above, we find that petitioner is not entitled to the theft loss deductions of $74,301 and $102,000 for 2008.

Petitioner also claimed a 2008 theft loss deduction for $100,000 in unpaid compensation. She alleges that she negotiated a $5 million payout from Merendon Mining on behalf of approximately 50 of her clients before the involuntary bankruptcy. She alleges that she was to receive $100,000 in compensation as part of the negotiation but was not paid, and she claims the $100,000 lost compensation as part of her 2008 theft loss deduction. However, she did not establish that she reported the $100,000 as gross income for a prior year. See Haff v. Commissioner, T.C. Memo. 2015-138 (taxpayers are entitled to loss deduction for unpaid compensation if the amount was previously included in income). Nor did she provide any documentation to support her claim to the $100,000 in compensation. Accordingly, she is not entitled to deduct the $100,000 in compensation as a theft loss for 2008.

We hold that petitioner is not entitled to a theft loss deduction in connection with an investment in the Ponzi scheme and unpaid compensation from Merendon

[*11] Mining for 2008.[3]  Accordingly, she is not entitled to net operating loss carrybacks for 2004 and 2005.  We find on the basis of the stipulation of settled issues filed on January 30, 2012, that petitioner has tax deficiencies of $5,342 and $13,556 for 2004 and 2005, respectively, and that she is not liable for a section 6662(a) accuracy-related penalty for either year.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

Decision will be entered under

Rule 155.

---

[3]Respondent argues that even if petitioner established an investment in Merendon Mining, she has not adequately established that 2008 was the year of the loss as she discovered the Ponzi scheme in 2006 or 2007.  He also argues that petitioner had a reasonable prospect of recovering the loss in 2008 because the bankruptcy court did not deny her claims until 2014.